DORSEY, GDN., APPELLANT, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., APPELLEE.

[Cite as Dorsey *v.* State Farm Mut. Auto. Ins. Co. (1984), 9 Ohio St. 3d 27.]

(No. 82-1662—Decided January 11, 1984.)

*Richard H. Siegel Co., L.P.A.,* and *Mr. Richard H. Siegel,* for appellant.
*Meyers, Hentemann, Schneider & Rea Co., L.P.A.,* and *Mr. Henry A. Hentemann,* for appellee.

CELEBREZZE, C.J. The question before the court today is whether an unemancipated minor child may maintain a cause of action in negligence against the estate of the child's deceased parent and her liability insurance company. For the reasons to follow, we answer that question in the affirmative.

In *Karam* v. *Allstate Ins. Co.* (1982), 70 Ohio St. 2d 227 [24 O.O.3d 327], this court identified the reasons for retention of the doctrine of parental immunity to be: preservation of family tranquility, possible interference with parental discipline and control, risks of fraud and collusion due to the predominance of liability insurance, and potential depletion of family funds. *Id.* at 228-229. The court in *Karam* also surveyed the law on parental im-

munity and found that while a significant number of jurisdictions had abrogated parental immunity, a significant number of jurisdictions had opted to retain it. *Id.* at fn. 4. Thus, the court concluded in its syllabus:

"An unemancipated child may not recover in a tort action instituted against the administrator of the estate of the child's mother and her liability insurance company for personal injuries received by the child in an automobile accident alleged to be proximately caused by the negligent operation of an automobile, and which results in the mother's death. The immunity arising from the parent-child relationship shall be recognized even though the alleged negligent parent has deceased. (*Teramano* v. *Teramano,* 6 Ohio St. 2d 117 [35 O.O.2d 144], followed.)"

We are now in a position to reconsider our decision in *Karam.*

In *Prem* v. *Cox* (1983), 2 Ohio St. 3d 149, we recently faced a similar issue in the context of interspousal immunity where the estate of the deceased spouse brings an action against the surviving spouse. In *Prem, supra,* we held that:

"The doctrine of interspousal immunity does not bar an action for wrongful death brought by the estate of a deceased spouse against the surviving spouse."

The rationale for our decision in *Prem* was that, when the spouse who is seeking recovery is deceased, the reasons for imposition of the doctrine of interspousal immunity no longer exist. This court stated in *Prem,* at 151:

"* * * [T]he public policy reasons underlying the doctrine of interspousal immunity lose whatever force they might otherwise have had after the marriage has terminated by the death of one of its partners. Fraud and collusion are unlikely to occur when one spouse is dead and the action is brought by the legal representative of that person's estate. Furthermore, there is no marital peace and harmony to be preserved. It is not realistic to maintain that insurance companies are tactically disadvantaged in this situation. Thus, the reasons for the immunity are irrelevant to a wrongful death action. The doctrine should be confined to cases supported by the traditional justifications."

In the case at bar, the traditional justifications supporting the doctrine of parental immunity are not present where the parent who would normally be able to invoke the immunity is deceased. When the parent-tortfeasor dies, the parent-child relationship terminates insofar as parental immunity is concerned. That is, there is no longer the compelling need to preserve harmony and tranquility between a child and a deceased parent or to insure the ability of the parent to discipline the child. Moreover, the risks of fraud and collusion are considerably lessened where the parent against whom the action is brought is deceased and is no longer capable of fabricating evidence or structuring a lawsuit so as to allow recovery by the child against the parent's insurer.

We hereby overrule *Karam* v. *Allstate Ins. Co.* and hold that the doctrine of parental immunity does not bar an action in negligence brought against

the estate of a deceased parent and her liability insurance company by the unemancipated minor children.[1]

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings.[2]

*Judgment reversed and*
*cause remanded.*

W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN and C. BROWN, JJ., concur separately.

LOCHER and HOLMES, JJ., dissent.

WILLIAM B. BROWN, J., concurring. Because I believe the doctrine of parental immunity should be abolished without the reservation retained by the majority I concur in the judgment only. As I previously stated in my concurrence in *Prem* v. *Cox* (1983), 2 Ohio St. 3d 149, 152, I strongly believed interspousal immunity to be an outmoded, ineffective, anachronistic and unconstitutional doctrine. The reasons for my belief were amply set forth in my dissenting opinions in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, 271 [10 O.O.3d 403]; and *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152, 155 [23 O.O.3d 188]. I see no difference in the justifications, logic and analysis now put forward with regard to parental immunity. Thus, those same reasons lead me to conclude that the doctrine of parental immunity is also outmoded, ineffective, anachronistic and unconstitutional. Consequently, I would abolish parental immunity without the limitations retained by the majority.

C. BROWN, J., concurs in the foregoing concurring opinion.

---

[1] We are not alone in reaching this conclusion. See, *e.g., Brennecke* v. *Kilpatrick* (Mo. 1960), 336 S.W. 2d 68; *Thurman* v. *Etherton* (Ky. 1970), 459 S.W. 2d 402, 403; *Johnson* v. *Myers* (1972), 2 Ill. App. 3d 844, 277 N.E. 2d 778; *Sisler* v. *Seeberger* (1979), 23 Wash. App. 612, 596 P. 2d 1362.

[2] This is not the first occasion where a change in the membership of the court has produced contrary results on the same issue within a relatively short period of time. See *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100 (overruling *Viers* v. *Dunlap* [1982], 1 Ohio St. 3d 173, and *Straub* v. *Voss* [1982], 1 Ohio St. 3d 182.) Appellant suggests that this court's decision in *Karam* does not represent the view of the "duly elected and currently serving" members of this court. It is beyond serious question that this court's decision in *Karam, supra,* is not subject to attack simply because one justice from the *Karam* majority was defeated in an intervening election and two judges of the Courts of Appeals sat pursuant to Section 2(A), Article IV of the Ohio Constitution. Nevertheless, this court, as presently constituted, has reached a result which differs from that reached by the majority in *Karam.* The majority decision in *Karam* represents an impediment to an injured child's recovering damages where no valid public policy goals stand in the way. As such, the decision reached in *Karam* shall have no continued application because the result is unjust, irrespective of the source of that determination.

HOLMES, J., dissenting. The doctrine of parental immunity has been firmly established in this state for many years. Accordingly, in *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117 [35 O.O.2d 144], this court held that a parent is immune from suits in tort by his unemancipated minor child unless sufficient facts illustrate abandonment of the parental relationship. Many policy reasons are cited for retention of the parental immunity doctrine. The two most frequently stated, and quite validly so, are protection from fraud and collusion, as well as the preservation of family tranquility. *Karam* v. *Allstate Ins. Co.* (1982), 70 Ohio St. 2d 227 [24 O.O.3d 327].

In the first instance, it certainly cannot reasonably be claimed that there has been abandonment here. Abandonment requires intent, and to reason that a mother had intended to abandon her children just prior to a fatal automobile accident is obviously ludicrous.

The majority here points to this court's recent decision in *Prem* v. *Cox* (1983), 2 Ohio St. 3d 149, which abrogated the doctrine of spousal immunity, for authority to abrogate parental immunity. The rationale is that "the traditional justifications supporting the doctrine of parental immunity are not present where the parent who would normally be able to invoke the immunity is deceased."

The *Prem* decision can be significantly distinguished from this case. The policy reasons, which a majority of this court found to be absent in *Prem*, are still very much alive in a parental immunity action. By the abolition of this doctrine it will be possible for an injured child to bring an action against the estate of his deceased parent and receive a judgment in excess of the insurance coverage, and then proceed against the remaining assets in the estate to the great disadvantage of other members of the family. In my view, this not only destroys the time-honored parent-child relationship, but also will destroy the relationship between the injured child and his siblings.

The basic reasons for the continuance of the parental immunity doctrine which were pronounced most recently in *Karam* v. *Allstate Ins. Co., supra,* are equally controlling today. I believe that the adherence to such doctrine is in the best interests of the citizens of Ohio.

I would affirm the court of appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.