MAUK ET AL., APPELLANTS, *v.* MAUK, APPELLEE.

[Cite as Mauk *v.* Mauk (1984), 12 Ohio St. 3d 156.]

(No. 83-1337—Decided July 25, 1984.)

Piacentino & Piacentino Co., L.P.A., and *Mr. C. Michael Piacentino,* for appellants.

Baran & Baran Co., L.P.A., and *Mr. Gregory G. Baran,* for appellee.

*Per Curiam.* The issue presented in this case is whether an unemancipated minor child may be held liable to his parent in tort.

Although we have not previously addressed this precise question, the doctrine of parental immunity was expressly approved by this court in *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117 [35 O.O.2d 144], paragraph one of the syllabus. Generally speaking, the rule operates to preclude an unemancipated minor child from maintaining an action in tort against his parent. *Id.*

*Teramano* was followed, and a detailed analysis of the development of parental immunity undertaken, in *Karam* v. *Allstate Ins. Co., supra,* at 227-234. *Karam* was subsequently overruled in *Dorsey* v. *State Farm Mut. Auto. Ins. Co.* (1984), 9 Ohio St. 3d 27, in order to establish an exception

where the tort action is brought by an unemancipated minor child against the estate of a deceased parent and her liability insurance company. However, the underlying doctrine of parental immunity was otherwise retained.

A recognized corollary rule to parental immunity is that a parent may not prosecute a tort action against his unemancipated minor child. See, generally, Annotation (1958), 60 A.L.R. 2d 1284, 1286-1288, Section 2. If this variation of the rule were to be applied herein, appellants' claim would be barred.

Appellants do not dispute this point but argue that the time has come to abrogate parent-child immunity in all of its applications. In support of their position, appellants maintain that this is the direction in which most jurisdictions are moving, especially in the narrower area of parental immunity.

It is true that the subject of parental immunity has been fertile ground for debate in recent years. Of those states which have considered the issue, however, few have eliminated the doctrine entirely.[1] Many more have curtailed it by limiting its application to certain circumstances.[2] Two others have replaced it with a reasonable parent standard.[3] Of the remaining states, most, including Ohio, have basically continued to adhere to the traditional rule for simple negligence torts.[4]

---

[1] *Petersen* v. *Honolulu* (1969), 51 Hawaii 484, 486, 462 P. 2d 1007; *Rupert* v. *Stienne* (1974), 90 Nev. 397, 405, 528 P. 2d 1013; *Briere* v. *Briere* (1966), 107 N.H. 432, 435, 224 A. 2d 588; *Gelbman* v. *Gelbman* (1969), 23 N.Y. 2d 434, 437, 297 N.Y. Supp. 2d 529, 245 N.E. 2d 192; *Falco* v. *Pados* (1971), 444 Pa. 372, 376, 282 A. 2d 351; *Elam* v. *Elam* (1980), 275 S.C. 132, 137, 268 S.E. 2d 109.

[2] The major variations pertaining to tort actions include the following:

Parental immunity only where the exercise of parental authority or discretion is somehow involved: *Turner* v. *Turner* (Iowa 1981), 304 N.W. 2d 786, 789; *Rigdon* v. *Rigdon* (Ky. 1970), 465 S.W. 2d 921, 923; *Plumley* v. *Klein* (1972), 388 Mich. 1, 8, 199 N.W. 2d 169; *Small* v. *Rockfeld* (1974), 66 N.J. 231, 244, 330 A. 2d 335; *Goller* v. *White* (1963), 20 Wis. 2d 402, 413, 122 N.W. 2d 193. See, also, *Sandoval* v. *Sandoval* (1981), 128 Ariz. 11, 14, 623 P.2d 800; *Schneider* v. *Coe* (Del. 1979), 405 A. 2d 682, 684.

Parental immunity except where the injury was caused by negligence in a motor vehicle accident: *Hebel* v. *Hebel* (Alaska 1967), 435 P. 2d 8, 15; *Ooms* v. *Ooms* (1972), 164 Conn. 48, 51, 316 A. 2d 783 (discussing Conn. Gen. Stat. Section 52-572c); *Nocktonick* v. *Nocktonick* (1980), 227 Kan. 758, 767, 611 P. 2d 135; *Black* v. *Solmitz* (Me. 1979), 409 A. 2d 634, 640; *Transamerica Ins. Co.* v. *Royle* (Mont. 1983), 656 P. 2d 820, 824; *Guess* v. *Gulf Ins. Co.* (1981), 96 N.M. 27, 29, 627 P. 2d 869; *Triplett* v. *Triplett* (1977), 34 N.C. App. 212, 215, 237 S.E. 2d 546 (pertaining to N.C. Gen. Stat. Section 1-539.21); *Unah* v. *Martin* (Okla. 1984), 676 P. 2d 1366; *Silva* v. *Silva* (R.I. 1982), 446 A. 2d 1013, 1016; *Smith* v. *Kauffman* (1971), 212 Va. 181, 186, 183 S.E. 2d 190; *Merrick* v. *Sutterlin* (1980), 93 Wash. 2d 411, 416, 610 P. 2d 891; *Lee* v. *Comer* (W. Va. 1976), 224 S.E. 2d 721, 725.

To the extent of liability insurance: *Williams* v. *Williams* (Del. 1976), 369 A. 2d 669, 672; *Ard* v. *Ard* (Fla. 1982), 414 So. 2d 1066, 1070; *Sorensen* v. *Sorensen* (1975), 369 Mass. 350, 352-353, 339 N.E. 2d 907.

Not for intentional torts: *Elkington* v. *Foust* (Utah 1980), 618 P. 2d 37, 40.

See, also, *Wood* v. *Wood* (1977), 135 Vt. 119, 122, 370 A. 2d 191.

[3] *Gibson* v. *Gibson* (1971), 3 Cal. 3d 914, 921, 92 Cal. Rptr. 288, 479 P. 2d 648; *Anderson* v. *Stream* (Minn. 1980), 295 N.W. 2d 595, 601.

[4] *Owens* v. *Auto Mut. Indemn. Co.* (1937), 235 Ala. 9, 11, 177 So. 133; *Thomas* v. *Inmon*

Fewer cases have expressly considered the issue of a child's liability to his parent in tort. Of these, a number have concluded that the action may lie only where the child is emancipated, and have then set forth the factors constituting emancipation. See, *e.g., Carricato* v. *Carricato* (Ky. 1964), 384 S.W. 2d 85, 87-88; *Taylor* v. *Taylor* (1950), 360 Mo. 994, 999-1000, 232 S.W. 2d 382; *Fitzgerald* v. *Valdez* (1967), 77 N.M. 769, 779, 427 P. 2d 655; *Gillikin* v. *Burbage* (1965), 263 N.C. 317, 323, 139 S.E. 2d 753; *Detwiler* v. *Detwiler* (1948), 162 Pa. Super. 383, 385, 57 A. 2d 426; *Logan* v. *Reaves* (1962), 209 Tenn. 631, 354 S.W. 2d 789.

In keeping with the movement toward abrogating or modifying parental immunity, some states have permitted such suits even against an unemancipated minor. See *Tamashiro* v. *De Gama* (1969), 51 Hawaii 74, 79, 450 P. 2d 998; *Jagers* v. *Royal Indemn. Co.* (La. 1973), 276 So. 2d 309, 313 (permitting suit against major child for tort committed during his majority); *Gaudreau* v. *Gaudreau* (1965), 106 N.H. 551, 552-553, 215 A. 2d 695; *Gelbman* v. *Gelbman* (1969), 23 N.Y. 2d 434, 437, 297 N.Y. Supp. 2d 529, 245 N.E. 2d 192; *Ertl* v. *Ertl* (1966), 30 Wis. 2d 372, 373, 141 N.W. 2d 208; *Silva* v. *Silva* (R.I. 1982), 446 A. 2d 1013, 1016. See, also, *New Hampshire Ins. Co.* v. *Fahey* (1982), 385 Mass. 137, 138, 430 N.E. 2d 1193 (permitting insurance company, as subrogee, to collect against son for loss paid to father).

However, over time, the greater number of cases dealing with the issue of an unemancipated minor's liability to his parent in tort have come down in favor of immunity. See, *e.g., Silverman* v. *Silverman* (1958), 145 Conn. 663, 666, 145 A. 2d 826; *Shaker* v. *Shaker* (1942), 129 Conn. 518, 524, 29 A. 2d 765; *Wright* v. *Farmers' Reliance Ins. Co.* (Fla. App. 1975), 314 So. 2d 641; *Meehan* v. *Meehan* (Fla. App. 1961), 133 So. 2d 776, 777; *Harlan Natl. Bank* v. *Gross* (Ky. 1961), 346 S.W. 2d 482; *Thompson* v. *Thompson* (Ky. 1954), 264 S.W. 2d 667, 668; *Latz* v. *Latz* (1971), 10 Md. App. 720, 723-724, 272 A. 2d 435; *Schneider* v. *Schneider* (1930), 160 Md. 18, 22, 152 A. 498; *Nahas* v.

---

(1980), 268 Ark. 221, 223, 594 S.W. 2d 853; *Horton* v. *Reaves* (1974), 186 Colo. 149, 156, 526 P. 2d 304; *Coleman* v. *Coleman* (1981), 157 Ga. App. 533, 534, 278 S.E. 2d 114; *Pedigo* v. *Rowley* (1980), 101 Idaho 201, 205, 610 P.2d 560; *Thomas* v. *Chicago Bd. of Edn.* (1979), 77 Ill. 2d 165, 171, 395 N.E. 2d 538; but, see, *Cummings* v. *Jackson* (1978), 57 Ill. App. 3d 68, 70, 372 N.E. 2d 1127; *Schenk* v. *Schenk* (1968), 100 Ill. App. 2d 199, 202, 241 N.E. 2d 12 (no immunity except where injuries were caused by mere negligence within scope of parental relationship); *Vaughan* v. *Vaughan* (1974), 161 Ind. App. 497, 500, 316 N.E. 2d 455; but, see, *Buffalo* v. *Buffalo* (Ind. App. 1982), 441 N.E. 2d 711, 713-714 (suit for negligence by child against noncustodial parent is not barred where parents' marriage dissolved prior to the injury); *Bondurant* v. *Bondurant* (La. App. 1980), 386 So. 2d 705, 707 (discussing La. Rev. Stat. Section 9:571); *Shell Oil Co.* v. *Ryckman* (1979), 43 Md. App. 1, 3, 403 A. 2d 379; *Montz* v. *Mendaloff* (1978), 40 Md. App. 220, 224, 388 A. 2d 568; *McNeal* v. *Estate of McNeal* (Miss. 1971), 254 So. 2d 521, 523; *Fugate* v. *Fugate* (Mo. 1979), 582 S.W. 2d 663, 669 (parent with custody immune unless suit will not seriously disturb family relations); *Pullen* v. *Novak* (1959), 169 Neb. 211, 220, 99 N.W. 2d 16; *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117, 118-119 [35 O.O.2d 144]; but, see, *Dorsey* v. *State Farm Mut. Auto. Ins. Co.* (1984), 9 Ohio St. 3d 27; *Winn* v. *Gilroy* (1983), 61 Ore. App. 243, 656 P. 2d 386, 387; *Campbell* v. *Gruttemeyer* (1968), 222 Tenn. 133, 147, 432 S.W. 2d 894; *Oldman* v. *Bartshe* (Wyo. 1971), 480 P. 2d 99, 101.

*Noble* (1966), 77 N.M. 139, 142, 420 P. 2d 127; *Hill* v. *Graham* (Okla. 1967), 424 P. 2d 35, 38; *Hampton* v. *Clendinning* (Okla. 1966), 416 P. 2d 617, 621; *Bush* v. *Bush* (1967), 95 N.J. Super. 368, 378-379, 231 A. 2d 245; *Chosney* v. *Konkus* (1960), 64 N.J. Super. 328, 331, 165 A. 2d 870; *Stitzinger* v. *Stitzinger Lumber Co.* (1958), 187 Pa. Super. 453, 455, 144 A. 2d 486. We are inclined to agree with the weight of this authority, particularly under the facts of this case.

Several reasons have historically been offered in support of parental immunity. See *Dorsey* v. *State Farm Mut. Auto. Ins. Co., supra,* at 28.[5] Two of these have special application to the adoption of the reciprocal immunity of the unemancipated minor child. They are: (1) the preservation of the peace and harmony of the family, and (2) the prevention of fraud and collusion made possible by the widespread existence of liability insurance.[6] One further consideration is the notion that it is inconsistent for an individual to occupy the role of parent and guardian to a child, thereby being entrusted with the child's care, and to simultaneously pursue an action for damages against that child. *Schneider* v. *Schneider, supra; Nahas* v. *Noble, supra,* at 140.

Applying these principles to the case at bar, we note that appellants not only are parents to appellee but Harry Mauk was also the driver of one of the vehicles involved in the accident, owner of the other and, presumably, the insurer of both. Under such circumstances, it is indeed doubtful as to whether the interests of the parties are truly adverse in nature. In the event they are not, the potential for fraud and collusion is unusually great. If, on the other hand, the relationship of the parties is in fact adverse as a consequence of this lawsuit, violence is done to the peace and harmony of the family unit. Either result is unacceptable.

Accordingly, for the reasons herein cited, the court of appeals did not err in finding that appellants' claim is barred by the immunity of appellee. The judgment is, therefore, affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur.

W. BROWN, SWEENEY and C. BROWN, JJ., dissent.

LOCHER, J., concurring. I wholeheartedly concur in the majority opinion and decision herein. As I stated in my concurrence in *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152, 155 [23 O.O.3d 188]: "The family is the

---

[5] None of these traditional reasons were held to be applicable in *Dorsey,* at 29, due to the prior decease of the parent-tortfeasor.

[6] For a more detailed discussion of the problem of collusive lawsuits, see Thompson, Intrafamily Immunity: A Vanishing Myth? (1982), 32 Fedn. Ins. Couns. Q. 289, 295-298.

basic social unit." We should zealously protect our greatest national treasure, the family institution. The court is correct today in not rushing to join the so-called trend towards abrogation of family immunity. The reasons supporting the doctrine are as viable today, especially under the present circumstances, as they were when *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117 [35 O.O.2d 144], was decided. To hold otherwise would deal another blow to those fighting the glorious battle to support the family.

HOLMES, J., concurring. I am able to concur in this majority opinion based upon the philosophy of my dissent in *Dorsey* v. *State Farm Mut. Auto. Ins. Co.* (1984), 9 Ohio St. 3d 27, 31, wherein I stated that the reasons for the continuance of the parental immunity doctrine pronounced recently in *Karam* v. *Allstate Ins. Co.* (1982), 70 Ohio St. 2d 227 [24 O.O.3d 327], were equally controlling at the time of writing *Dorsey,* and they are equally supportive now.

WILLIAM B. BROWN, J., dissenting. I dissent in the present case for the reasons which I have already articulated in my concurrence in *Dorsey* v. *State Farm Mut. Auto Ins. Co.* (1984), 9 Ohio St. 3d 27, 30.

C. BROWN, J., concurs in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. For the reasons stated in my dissent in *Karam* v. *Allstate Ins. Co.* (1982), 70 Ohio St. 2d 227, at 235-239 [24 O.O.3d 327], the doctrine of parental immunity which precludes an unemancipated child from maintaining a negligence action against his parent should be overruled. Overruling such an unjust parental-immunity rule would nullify any need for this court to create today, in *Mauk,* a child-immunity rule whereby a parent is precluded from maintaining a negligence action against his unemancipated child.

Both the parental-immunity and child-immunity rules in negligence actions rest upon the same unrealistic, fictitious, mythical, absurd and nonsensical reasons that such immunity promotes family harmony by discouraging fanciful claims to the detriment of the family unit and that such "immunity prevents fraud and collusion at the expense of tactically disadvantaged insurance companies." See *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, 270 [10 O.O.3d 403], and *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243 [31 O.O.2d 504], upholding the doctrine of interspousal immunity.

No amount of glorification of the family unit and bemoaning that elimination of parental immunity would "deal another blow to those fighting the glorious battle to support the family," and the false foundation upon which it rests, can justify this court's continued acceptance of this useless doctrine. See *Karam, supra,* at 235-236 (Clifford F. Brown, J., dissenting).

This unfounded fraud and collusion rationale was discussed with approval in *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152 [23 O.O.3d 188], which

dealt with interspousal immunity. Thereafter this court in *Karam* v. *Allstate Ins. Co., supra,* applied the same reasoning as that set forth in *Bonkowsky* for upholding parental immunity. *Id.* at 233-234.

The likelihood of fraud and collusion was unanimously rejected by this court when it declared Ohio's Guest Statute unconstitutional in *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195 [72 O.O.2d 112]. For the same reason it was rejected in *Primes, supra,* it should be rejected here. *Bonkowsky, supra,* at 156-157 (William B. Brown, J., dissenting), and at 162-163 (Clifford F. Brown, J., dissenting). There are many safeguards against fraudulent or collusive claims in our judicial framework. Among these are the extensive and detailed pretrial discovery procedures of Civ. R. 26 through 37 and the procedures of Civ. R. 56 relating to summary judgment.

Our decision today in *Mauk* exhibits no faith in the judicial system. It implicitly asserts that the system is paralyzed when it comes to discerning false negligence actions between a parent and a child.

I disagree with the *per curiam* factual statements that "of those states which have considered the issue * * * [of parental immunity], few have eliminated the doctrine entirely," and that "[o]f the remaining states, most, including Ohio, have basically continued to adhere to the traditional rule for simple negligence torts." These statements presumably are concerned only with negligence actions between parent and child, not with other legal actions, because only negligence actions are at issue here. Such statements in the *per curiam* opinion give a false impression of conflict with the majority opinion in *Karam* v. *Allstate Ins. Co., supra,* fn. 4, at 230-231, which lists twenty-eight states where the parental immunity doctrine has not been initially adopted, or if adopted, has been abrogated in whole or in part, and lists only eighteen states which continue to follow the doctrine of parental immunity.

As opposed to parental immunity for negligence actions between parent and child, the modern trend, which also prevails in Ohio, is that a minor may maintain an action for damages against his parent where the injury was intentional or resulted from willful misconduct or an evil mind, whether or not characterized as malice. *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117, 119 [35 O.O.2d 144], relying upon *Cowgill* v. *Boock* (1950), 189 Ore. 282, 218 P. 2d 445; Annotation (1951), 19 A.L.R. 2d 405; 59 American Jurisprudence 2d (1971) 256, Parent and Child, Section 159.

Since a child in Ohio can sue the parent for damages incident to an intentional tort, and presumably *vice versa* (*Teramano, supra*), but not for an injury based on negligence, such parental immunity rule is unconstitutional based on the same reasoning declaring the Ohio Guest Statute unconstitutional in *Primes, supra.* Given the fact that parents and their children are denied the right to sue each other for damages based upon negligent infliction of injury, they are discriminated against as compared with parents and their children who may sue each other for intentional infliction of injury, and are further discriminated against in the same manner and for equally uncon-

vincing reasons as were friends denied the right to sue under the Guest Statute. *Bonkowsky, supra,* at 157 (William B. Brown, J., dissenting); *Primes, supra,* at 204-205.

Moreover, in Ohio, there are many other civil actions maintainable by a child against his parent, and *vice versa,* such as the right to sue to set aside a real estate conveyance, and the right to sue for compensation for services. 41 Ohio Jurisprudence 2d (1960) 380, 381, Sections 60 and 62.

This right to maintain such legal actions, and others, between parent and child further points emphatically to the discriminatory nature of our holding here in *Mauk* by singling out negligence actions of a parent against a child and granting immunity to the child. This discrimination against negligence actions of a parent against a child violates Section 2, Article I of the Ohio Constitution on equal protection grounds and Section 16, Article I of the Ohio Constitution which grants a remedy in due course of the law. It also violates the Fourteenth Amendment to the United States Constitution guaranteeing due process of law and equal protection, even more forcefully than the violation of these constitutional provisions by the Guest Statute condemned in *Primes, supra.*

Therefore, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.