Kathryn LEACH, et al., Plaintiffs,

v.

NEWPORT YELLOW CAB, INC., et al., Defendants.

No. C–3–82–077.

United States District Court,
S.D. Ohio, W.D.

Aug. 22, 1985.

**294**

Barbara J. Pariente, West Palm Beach, Fla., Kenneth G. Rush, Springfield, Ohio, for plaintiffs.

Gary D. Bullock, Carl J. Stitch, Cincinnati, Ohio, for defendant Consolidated Rail Corp.

David Faulkner, Cincinnati, Ohio, for defendants Newport Yellow Cab, Inc. and Charles DeMoss.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT CONRAIL'S MOTION FOR SUMMARY JUDGMENT; DECISION AND ENTRY OVERRULING MOTION OF DEFENDANTS NEWPORT YELLOW CAB AND CHARLES DeMOSS FOR JUDGMENT ON THE PLEADINGS; CONFERENCE CALL SET

RICE, District Judge.

In this action, Plaintiff Kathryn Leach, by and through her legal guardian, Martin Leach, and Plaintiff Kevin Leach, by and through his legal guardian, Pamela Miller, seek compensation from Defendants Newport Yellow Cab, Inc. ("Newport Yellow Cab"), Charles DeMoss, and Consolidated Rail Corporation ("Conrail"). Plaintiff Kathryn Leach seeks damages for the injuries she suffered on August 6, 1980, when a car she was operating collided with a taxi cab owned by Defendant Newport Yellow Cab and operated by Defendant Charles DeMoss, Newport Yellow Cab's employee. Plaintiff Kevin Leach, the son of Kathryn Leach, seeks compensation for the loss of parental consortium occasioned by the se-

vere and permanent injuries suffered by his mother.

Plaintiffs seek to recover damages from Defendant Conrail because at the time of the accident, Newport Yellow Cab was operating under a contract with Conrail by which Newport Yellow Cab would have cabs and vans, together with drivers, available to transport Conrail employees. At the time of the collision, Defendant DeMoss was returning from Bellefontaine, Ohio, having just completed transporting three Conrail employees to Bellefontaine from Sharonville, Ohio. Plaintiffs have three alternative theories upon which they rely to impose liability upon Conrail. First, they allege that there was a master-servant relationship between Conrail and Newport Yellow Cab and, as a consequence, Conrail is vicariously liable for Newport Yellow Cab's negligence. *See* Plaintiff's Amended Complaint (Doc. # 22), at ¶ 15. Second, Plaintiffs allege that Conrail was negligent in hiring Defendant Newport Yellow Cab. *Id.* at ¶¶ 16–17. Thirdly, Plaintiffs assert that Conrail is liable because it attempted to delegate to Newport Yellow Cab certain safety requirements imposed upon it by statute, rule or regulation and such safety requirements are non-delegable duties. *Id.* at ¶ 18.

Briefly, the collision occurred when the automobile that Kathryn Leach was driving collided with a van which was owned by Newport Yellow Cab and operated by Charles DeMoss. Prior to the accident, the van had experienced mechanical failure and had broken down. DeMoss was unable to drive it or to push it off the road. Kathryn Leach received severe injuries as a result of the accident and remains in a semi-comatose condition. As indicated above, at the time of the accident, DeMoss was returning from Bellefontaine, Ohio, after having transported employees of Conrail there from Sharonville, Ohio.

This cause is now before the Court on the motion of Defendant Conrail seeking summary judgment (Doc. # 44) and the motion of Defendants Newport Yellow Cab and Charles DeMoss, seeking a judgment on the pleadings on Kevin Leach's claim for relief (Doc. # 39).[1] Initially, the Court will discuss Defendant Conrail's Motion for Summary Judgment. The Court will then turn its attention to the motion of Defendants Newport Yellow Cab and Charles DeMoss for a judgment on the pleadings.

## I. *Defendant Conrail's Motion for Summary Judgment (Doc. # 44).*

In this motion, Defendant Conrail seeks a summary judgment on each of Plaintiffs' three alternative theories against it. Initially, the Court will review the standards that govern the grant or denial of a motion for summary judgment. Then the Court will turn to the specific issues raised by Defendant Conrail's Motion for Summary Judgment.

Under Rule 56(c), Fed.R.Civ.P., a motion for summary judgment can be sustained only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In *Snider v. Creasy*, 548 F.Supp. 601 (S.D. Ohio, 1982), Judge Rubin summarized this standard:

> The summary judgment standard in this Circuit is a stringent one. Fed.R.Civ.P. 56(c) permits the Court to grant summary judgment only when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Tee-Pak, Inc. v. St. Regis Paper Company*, 491 F.2d 1193, 1195 (6th Cir.1974). In deciding a motion for summary judgment, the Court must construe the evidence most favorably to the opposing party. *Bohn Alu-*

---

1. Also pending are two discovery motions, Plaintiff's Motion to Compel Discovery (Doc. # 32) and Defendant Newport Yellow Cab's Motion to Compel Discovery (Doc. # 37). The Court assumes that these motions are moot. Accordingly, same are hereby overruled. However, in the event that a dispute remains with respect to either one or both of these discovery motions, counsel is directed to renew the same.

*minum and Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962).

*Id.* at 602. *See also, Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Of course, if a motion for summary judgment is properly supported, the opposing party may not rest on its pleadings; rather, it must present affidavits or other evidence which set forth specific facts demonstrating the existence of a genuine issue of material fact. Rule 56(e), Fed.R.Civ.P.; *Gillmore v. Proctor and Gamble Company*, 417 F.2d 615 (6th Cir.1969); *Bouldis v. U.S. Suzuki Motor Corp., supra.* A summary judgment cannot be granted when there is a genuine issue about any material fact. *County of Oakland v. City of Berkley*, 742 F.2d 289, 297 (6th Cir.1984).

With these standards in mind, the Court now turns to the substantive issues raised by Conrail's Motion for Summary Judgment. As stated above, Plaintiffs have three alternative theories, upon which they would impose liability upon Conrail. First, Plaintiffs rely upon a theory of respondeat superior and argue that a master-servant relationship existed between Conrail and Defendant Newport Yellow Cab. Second, Plaintiffs allege that Defendant Conrail was negligent in hiring Newport Yellow Cab. Third, Plaintiffs argue that certain non-delegable duties were imposed upon Conrail which could not be then delegated to Newport Yellow Cab by Conrail. The Court will address these theories in order.

(1) *Plaintiffs' Respondeat Superior Argument in Favor of Conrail's Liability.*

■ Conrail posits two independent arguments as to why it cannot be held liable under a theory of respondeat superior. First, Conrail argues that irrespective of the business relationship between Conrail and Newport Yellow Cab or Charles DeMoss, the accident occurred outside the scope of that relationship, after the completion of all services to Conrail. Alternatively, Conrail argues that Newport Yellow Cab was an independent contractor rather than its servant, and as a consequence, it cannot be held liable under a theory of respondeat superior.

Conrail's initial contention, that regardless of the business relationship between it and Newport Yellow Cab, it cannot be held liable because the accident occurred outside the scope of the relationship, arises because the accident occurred after DeMoss had concluded transporting Conrail's employees from Sharonville to Bellefontaine and he was on the return trip. In *Simon v. McCullough Transfer Company*, 155 Ohio St. 104, 98 N.E.2d 19 (1951), the Ohio Supreme Court held in the syllabus:

> The common carrier of freight by motor vehicle who possesses a certificate issued under Part 2 of the Interstate Commerce Act and employs an independent contractor who does not possess such a certificate, to transport interstate freight in such independent contractor's truck carrying the permit plates of the common carrier, is not liable for the accident caused by the negligence of the independent contractor driving his own truck where, at the time of such accident, the independent contractor had entirely completed the transportation for the common carrier, had no further obligation or duty towards such common carrier and was driving the empty vehicle entirely under his own direction and control at a point distant from the location where he had completely unloaded the freight which he had been hired to transport.

The critical facts of *Simon* are analogous to the uncontested facts herein. In each instance, the accident occurred while the driver was driving his own vehicle after completing the deliveries on behalf of his employer and where the driver was under no further obligation to his employer. Herein, there is simply not a genuine issue of fact as to whether the accident occurred after DeMoss had dropped off the Conrail employees that he was transporting and while DeMoss was on his return trip. As the Court said in *Kirtland v. Interstate Motor Freight System*, 53 Ohio App. 459, 5 N.E.2d 707 (Lucas Cty. 1936):

[T]he questions of whether DeVenney was an independent contractor, and, if so, the responsibility of Appellee, if any, arising therefrom, or whether he was a servant or agent of Appellee, are unimportant. Whatever may be contended in these respects, the uncontradicted evidence effectively shows that at the time of the collision, he was engaged in no business or service of Appellee, but was acting exclusively in his own behalf and for his own purposes.

53 Ohio App. at 461–62, 5 N.E.2d 707. *See also, Wilcox v. TransAmerican Freight Lines, Inc.,* 371 F.2d 403 (6th Cir.), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967).

Based upon the uncontroverted facts of this case and the principles of law enunciated in *Simon, Kirtland* and *Wilcox,* the Court concludes that Conrail cannot be held liable for the tort of Newport Yellow Cab or DeMoss because they were not engaged in Conrail's business at the time the collision occurred. This is irrespective of whether Newport Yellow Cab and DeMoss are considered independent contractors or servants of Conrail.

 As stated above, Conrail also argues that Newport Yellow Cab was an independent contractor rather than its servant, and that as a consequence, it cannot be held liable for the negligence of Newport Yellow Cab or its employee, DeMoss. In determining whether a master-servant or employer-independent contractor relationship exists, the determining factor is the control of the master or the employer over the servant or independent contractor.[2] The classic test for this control is set forth in *Councell v. Douglas,* 163 Ohio St. 292, 126 N.E.2d 597 (1955), wherein the Ohio Supreme Court stated at Paragraphs 1 and 3 of the syllabus:

(1) The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested in merely the ultimate result to be accomplished, the relationship is that of employer and independent contractor.

.　　.　　.　　.　　.

(3) Where one employs another to do certain work for him, the mere right reserved by the employer to direct the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work so as to justify the conclusion that the relationship between the employer and the contractor is either that of principal and agent or master and servant. (Paragraph 4 of the syllabus in *Hughes .v. Railway Company,* 39 Ohio St. 461, approved and followed).

*Accord, Third Federal S & L Association of Cleveland v. Fireman's Fund Insurance Company,* 548 F.2d 166, 169–71 (6th Cir.1977); *Fisher v. United States,* 356 F.2d 706, *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966); *New York, Chicago and St. Louis Railroad Company v. Hefner Construction Company,* 9 Ohio App.2d 174, 223 N.E.2d 649 (Hancock Cty. 1967). Moreover, the mere fact that an employer reserves the right to supervise or inspect work during its performance does not make the contractor a mere servant where the mode and means of performance are within the control of the contractor. *Sullivan v. General Electric Company,* 226 F.2d 290, 291 (6th Cir.1955).

---

**2.** Plaintiffs argue that because the contract which created the relationship between Newport Yellow Cab and Conrail provides that it is to be interpreted under Pennsylvania law, the Court should determine the relationship under that law. The Court does not agree. This is an action to recover damages for the personal injuries suffered by Plaintiffs. As such, tort choice

of law principles apply. Under those principles, the Court has little problem in concluding that a situation wherein injuries suffered by Ohio residents as a result of an accident occurring in Ohio is governed by the substantive law of Ohio. *See Morgan v. Biro Manufacturing Co.,* 15 Ohio St.3d 339, 474 N.E.2d 286 (1984). *See also,* Restatement, 2d, Conflict of Laws § 146.

In the present case, the Plaintiffs and Conrail look solely to the contract between Newport Yellow Cab and Conrail in order to determine whether or not there is a genuine issue of fact regarding the status of Newport Yellow Cab as an independent contractor or as a servant of Conrail. The primary focus of the parties is upon Article 4 of the contract, which provides:

In performing services under this agreement, contractors shall operate as, and have the status of, an independent contractor and shall not act as, or be, an employee or agent of Conrail. Contractors shall employ, pay from its own funds, and discharge all persons engaged in the performance of the work to be performed hereunder, and such persons shall be under contractor's supervision, direction and control subject to general oversight and guidance of Conrail's division superintendent, Columbus, or whomever he may appoint.

Additionally, Plaintiffs point to Article 6 of the contract, which gives Conrail the right to terminate the agreement upon thirty days notice to Newport Yellow Cab. Moreover, Plaintiffs rely upon certain provisions in Appendix 2 of the agreement which require Newport Yellow Cab to have three vehicles available on a twenty-four hour a day basis, seven days a week, and which require Newport Yellow Cab to furnish additional vehicles when requested to do so. Furthermore, Plaintiffs rely upon Article 8 which allows Conrail to review the credentials of Newport Yellow Cab's personnel when Conrail so requests.

■ Where, as herein, the essential facts are not in dispute, the question of the relationship between the parties becomes one of law. *Sullivan v. General Electric Company, supra.* Moreover, the Ohio Supreme Court has held that when a contract is written, the question is likewise one of law for the Court. *Industrial Commission of Ohio v. Laird,* 126 Ohio St. 617, 186 N.E. 718 (1933). Herein, the facts are not in dispute. The only question is whether the contract between Conrail and Newport Yellow Cab results in a master-servant relationship or an employer-independent contractor relationship. This Court is of the opinion that the contract creates an employer-independent contractor relationship. There is nothing in the contract which would give Conrail the right to control the mode and manner in which Newport Yellow Cab performed its contractual duties. On the contrary, Article 4 of the contract disclaims such an intent. The mere fact that Article 4 gives general oversight authority to Conrail does not make Newport Yellow Cab its servant, because such authority is nothing more than the reservation by Conrail of the right to supervise the work during its performance. *See Sullivan v. General Electric Company, supra.* Other provisions relied upon by Plaintiffs are more in the nature of setting forth the quantity of work to be done not the right to control the mode and manner of doing the work. For instance, the requirement that Newport Yellow Cab have certain specific types of vehicles available twenty-four hours a day, seven days a week, is merely a quantity of work requirement. Similarly, the ability of Conrail to request additional vehicles if necessary is also a quantity of work provision in the contract. Likewise, the exhibits which Plaintiffs have attached to their Memorandum in Opposition to Defendant Conrail's Motion for Summary Judgment (Doc. # 48) are not indicia that Conrail had the ability or the right or in fact did control the mode and manner in which Newport Yellow Cab performed its work. Rather, these letters merely indicate that Conrail demanded timely and prompt performance of its work by Newport Yellow Cab. Finally, the fact that Conrail retained the right to unilaterally terminate the contract upon thirty days notice to Newport Yellow Cab does not indicate that Newport Yellow Cab was a servant rather than an independent contractor.

In conclusion, the Court has determined that the question of whether Newport Yellow Cab was Conrail's servant rather than its independent contractor, is, under the circumstances herein, a question of law for

the Court. Furthermore, the Court has concluded that the contract between Conrail and Newport Yellow Cab inescapably leads to but one conclusion and that conclusion is that Newport Yellow Cab was an independent contractor of Conrail.

Therefore, with reference to the Plaintiffs' first alternative theory of liability against Conrail, the Court has concluded that Conrail may not be held liable for the negligence of Newport Yellow Cab or its employee, Charles DeMoss, upon a theory of respondeat superior. Accordingly, the Court sustains that branch of Conrail's Motion for Summary Judgment which seeks judgment on Plaintiffs' claim of liability by virtue of respondeat superior.

### (2) *Conrail's Alleged Negligence in Hiring Newport Yellow Cab.*

The Court next turns to Plaintiffs' assertion that Conrail was negligent in hiring and retaining Newport Yellow Cab. It is well established that one is liable for its own negligence in engaging or retaining an incompetent or careless independent contractor. *Mooney v. Stainless, Inc.,* 338 F.2d 127, 131 (6th Cir.1964), *cert. denied,* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965); *Restatement,* 2d, of Torts, § 411. Conrail argues that there is no genuine issue of fact relating to the material questions of whether Newport Yellow Cab was indeed incompetent and if so, whether Conrail was negligent in hiring and retaining Newport Yellow Cab as an independent contractor.

■ The Court disagrees with Conrail. The deposition of Newport Yellow Cab's owner, John A. Hay, reveals that Newport Yellow Cab was not licensed by the Interstate Commerce Commission, that the owner was not familiar with the requirements of the Interstate Commerce Commission or the State of Ohio as to reflectors, lights or flares, and that its vehicles never carried things like safety flares, reflectors or lights. Additionally, the deposition of Defendant Charles DeMoss reveals that he was hired by Newport Yellow Cab notwithstanding the fact that his driver's license was then under suspension for a conviction of driving under the influence of alcohol. Apparently, DeMoss was not even asked whether his license was valid at the time he was hired. Based upon these factors, the Court concludes that there is a genuine issue of material fact regarding the question of whether Newport Yellow Cab was a competent or an incompetent independent contractor. Moreover, Conrail has submitted no evidence, as that term is used within Rule 56, which would convince the Court that there is an absence of a genuine issue of material fact regarding Conrail's own negligence in hiring or retaining Newport Yellow Cab as its independent contractor. Accordingly, the Court hereby overrules that branch of Conrail's motion for summary judgment which seeks judgment on Plaintiff's claim of negligent hiring.[3]

### (3) *Conrail's Alleged Negligence For Delegating Certain Non-Delegable Duties to Newport Yellow Cab.*

■ Turning to Plaintiffs' claim that Conrail in some manner improperly delegated one or more non-delegable duties, the Court finds said claim totally without merit. Indeed, the Court notes that Plaintiffs do not even argue about this theory in their memorandum in opposition to Conrail's motion for summary judgment. The Plaintiffs allege in their amended complaint that Ohio Revised Code §§ 4511.66, 4513.-03, 4513.05 and 49 C.F.R. §§ 390, 392–93, impose non-delegable duties upon Conrail. Under the non-delegable duty doctrine, if any of these sections impose a duty upon Conrail to provide specific precautions for the safety of others, then such a duty is deemed non-delegable, and Conrail cannot avoid liability by hiring an independent contractor to perform. *See, e.g.,* Restatement, 2d, Torts 424. However, these sections of

**3.** The parties do not address, and the Court expresses no opinion on the question of whether Conrail can be held liable for negligently hiring Newport Yellow Cab even though the accident occurred outside the scope of the employment relationship between Conrail and Newport Yellow Cab, following the completion of services to Conrail.

the Revised Code and C.F.R. impose duties on drivers or operators of motor vehicles in either intra-state or interstate travel. For instance, § 4511.66 prohibits a driver from parking a car on the traveled portion of a road; §§ 4513.03 and 4513.05 prohibit the operation of motor vehicles without tail lights. Sections 390.392 and 393 prohibit drivers from operating motor vehicles without certain safety equipment, such as flares, reflectors and lights. Conrail was neither driving nor operating a motor vehicle in interstate or intra-state travel when the collision occurred. Thus, no duty was imposed upon Conrail in the first instance whether or not that duty was non-delegable.

### (4) Conclusion

Based upon all of the foregoing, the Court hereby sustains in part and overrules in part Conrail's motion for summary judgment. The Court overrules that portion of Conrail's motion which sought a summary judgment on Plaintiffs' claims that it negligently hired Newport Yellow Cab. The Court sustains those portions of Conrail's motion for summary judgment in which Conrail sought summary judgment on Plaintiffs' claims based upon respondeat superior and the non-delegable duty doctrine.

II. *The Motion for Judgment on the Pleadings on Kevin Leach's Claim for Relief Filed by Defendants Newport Yellow Cab and DeMoss (Doc. # 39).*

Defendants Newport Yellow Cab and Charles DeMoss move for judgment on the pleadings on Plaintiff Kevin Leach's claim for relief. Through his guardian, Pamela Miller, Kevin Leach, the minor son of Kathryn Leach, seeks compensation for being permanently deprived of the love, services, companionship, care and maternal guidance from his mother as a result of Defendants' negligence. Plaintiffs' Amended Complaint (Doc. # 22) at ¶¶ 9–11. Newport Yellow Cab and DeMoss argue that Ohio does not recognize a child's independent claim

for relief for loss of parental consortium caused by the negligence of some third person. Plaintiff argues that the Ohio Supreme Court would recognize such a claim if faced with the question today. To rule on this motion, the Court will briefly review the standards that govern district courts when they sit in diversity actions and attempt to determine a state's substantive law. The Court will then address the substantive issue raised by the Defendants' motion for judgment on the pleadings.

A district court sitting in a diversity action must apply the substantive law of the forum state as expressed by the state's legislature and in the decisions of its highest court. *Erie Railroad v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Winston Corp. v. Continental Casualty Co.*, 508 F.2d 1298 (6th Cir.1975).

> If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 151, 1153 (6th Cir.1981). *See also, Mathis v. Eli Lilly and Co.*, 719 F.2d 134 (6th Cir.1983). However, federal courts' respect for the role of state courts as the primary expositors of the principles of state law counsels restraint when called upon to declare new principles of state law. *Grubb v. W.A. Foote Memorial Hospital*, 741 F.2d 1486, 1500 (6th Cir.1984), *reconsideration granted and judgment vacated on other grounds*, 759 F.2d 546 (6th Cir. 1985).

With these principles in mind, the Court turns to the question of whether Ohio courts would allow a child to recover for loss of consortium arising out of injuries to the child's parent which were caused by a third person. Arguing that the Ohio Supreme Court would allow a child to recover for its loss of parental consortium, Plaintiff

relies on *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981) in which the Michigan Supreme Court recognized a child's independent cause of action for loss of parental society and companionship when a parent is injured by the negligence of a third person. Defendants Newport Yellow Cab and Charles DeMoss rely on *Gibson v. Johnston*, 75 Ohio L.Abs. 413, 144 N.E.2d 310 (1956), *appeal dismissed,* 166 Ohio St. 288, 141 N.E.2d 767 (1957) in which the Montgomery County Court of Appeals held that no such cause of action exists in Ohio. *Accord Gleitz v. Gleitz*, 88 Ohio App. 337, 98 N.E.2d 74 (Cuyahoga Cty. 1951). The parties agree that the Ohio Supreme Court has not answered the question. Therefore, it devolves upon this Court to determine whether the Ohio Supreme Court would allow a child to assert his or her own independent claim for loss of parental consortium. In resolving this question, the Court is governed by the standards set forth above. The Court will first examine the decisions of other jurisdictions. Then, it will review the recent jurisprudence of the Ohio Supreme Court in an effort to determine how that court would resolve the question if it were presented to it today.

Before 1980, no court had recognized a child's right to recover for loss of parental consortium. *Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. 543, 546 n. 2, 652 P.2d 318, 319 n. 2 (1982). Since 1980, a growing number of courts have recognized a child's independent cause of action for loss of parental consortium caused by the negligence of a third person. *See, e.g., Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (Mass.1980); *Berger v. Weber, supra; Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Theama By Bichler v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984); *Ueland v. Reynolds Metals*, 103 Wash.2d 131, 691 P.2d 190 (1984); *Rosen v. Zorzos*, 449 So.2d 359 (Fla.App.1984).

In recognizing the child's right to recover, courts have rejected arguments that damages are too speculative. For instance, in *Berger v. Weber, supra*, the Michigan Supreme Court said:

> We are not convinced that the injury to the child is too speculative to award damages. Courts, law review commentators and treatise writers all recognize that the child suffers a genuine loss. While the loss of society and companionship is an intangible loss, juries often are required to calculate damages for intangible loss. Awards are made for pain and suffering, loss of society and companionship in wrongful death actions, and for loss of spousal consortium. Evaluating the child's damages is no more speculative than evaluating these other types of intangible losses.

411 Mich., 1, 17, 303 N.W.2d at 427 (footnote omitted). Moreover, courts have rejected the argument that monetary compensation is an inadequate substitute for the loss of parental love, society and companionship. In *Theama v. Kenosha, supra,* the Wisconsin Supreme Court said:

> Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this as a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery.

117 Wis.2d 508, 522, 344 N.W.2d at 520.

This is not to say that every jurisdiction which has considered the question has concluded that a child should have an independent cause of action for loss of parental consortium. On the contrary, the majority of jurisdictions that have considered the question have indeed concluded that such a cause of action does not exist. *See* Annot. 11 A.L.R. 4th 549 (1982). This is, of course, true of all jurisdictions which considered the question before 1980. *See, e.g., Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977). Likewise, a majority of jurisdictions, albeit a somewhat more slender one, which have considered the question initially, or have reconsidered it since the advent of *Ferriter v. Daniel O'Connell's Sons,*

*Inc., Berger v. Weber* and similar cases, have refused to recognize the child's right to recover. *See, e.g., Salin v. Kloempkin,* 322 N.W.2d 736 (Minn.1982); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982); *Schmeck v. City of Shawnee,* 231 Kan. 588, 647 P.2d 1263 (1982); *DeAngelis v. Lutheran Medical Center,* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983); *W.J. Bremer Co., Inc. v. Graham,* 169 Ga.App. 115, 312 S.E.2d 806 (1983), *cert. denied,* 252 Ga. 36, 312 S.E.2d 787 (1984); *Mueller v. Hellrung Construction Co.,* 107 Ill.App.3d 337, 63 Ill.Dec. 140, 437 N.E.2d 789 (1982); *Sawyer v. Bailey,* 413 A.2d 165 (Me.1980); *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980).

In reaching a child's claim to relief, those courts refusing the child's right to recover have concluded that the third party who injured the child's parent owed no duty to the child. *See, e.g., DeAngelis v. Lutheran Medical Center; Borer v. American Airlines, Inc.* Courts have reached this conclusion because a child's psychic injury is difficult to quantify, because such an award will lead to increased insurance premiums and because an award of compensation is no substitute for the loss of parental affection. *See, e.g.,* Keeton and Prosser, *The Law of Torts,* § 125 at 935–936 (5th ed. 1984).

Turning to recent decisions of the Ohio Supreme Court, no citations of authority are required to demonstrate that in the last five years the Ohio Supreme Court made a quantum leap in recognizing the rights of injured parties to receive compensation. For example, the Ohio Supreme Court has abrogated governmental immunities;[4] it has strengthened the rights of those in-

jured by dangerous products;[5] it has recognized the rights of workers to sue their employers for intentional torts in addition to receiving workers' compensation;[6] it has broadened the class of psychic injuries which entitle a party to compensation;[7] it has imposed the duty of reasonable care upon railroad companies at grade crossings;[8] and the court has adopted the discovery rule for purposes of determining when a cause of action accrues under the statute of limitations governing professional malpractice actions.[9]

Notwithstanding this explosive expansion of tort liability, the Ohio Supreme Court has been more reticent about abrogating interfamily immunities. It is only in the last eight months that the court has totally abrogated both parental immunity and spousal immunity. *Shearer v. Shearer,* 18 Ohio St.3d 94, 480 N.E.2d 388 (1985), *overruling, Bonkowsky v. Bonkowsky,* 69 Ohio St.2d 152, 431 N.E.2d 998 (1982); *Kirchner v. Crystal,* 15 Ohio St.3d 326, 474 N.E.2d 275 (1984), *overruling, Mauk v. Mauk,* 12 Ohio St.3d 156, 466 N.E.2d 166 (1984). In large measure, the Ohio Supreme Court has refused to abrogate the interfamily immunities because to do so would destroy family harmony. *See, e.g., Mauk v. Mauk,* 12 Ohio St.3d 156, 159–60, 466 N.E.2d 166, 169 (1984) (Locher, J., concurring); *Bonkowsky v. Bonkowsky,* 69 Ohio St.2d 152, 155, 431 N.E.2d 998, 1000 (1982) (Locher, J. and Celebrezze, C.J., concurring). *See also, Kirchner v. Crystal, supra,* 474 N.E.2d at 279–80 (Celebrezze, C.J., and Holmes, J., dissenting). Moreover, before totally abolishing parental and spousal immunities, the court partially abrogated them in situations where a lawsuit

---

**4.** *See, e.g., Enghauser Mfg. Co. v. Eriksson Engineering Ltd.,* 6 Ohio St.3d 31, 451 N.E.2d 228.

**5.** *See, e.g., Leichtamer v. American Motors Corp.,* 67 Ohio St.3d 456, 424 N.E.2d 568 (1981); *Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460, 432 N.E.2d 814 (1982).

**6.** *See, e.g., Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984); *Blankenship v. Cincinnati Milacron Chemicals,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982).

**7.** *See, e.g., Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983).

**8.** *Matkovich v. Penn Central,* 69 Ohio St.2d 210, 431 N.E.2d 652 (1982).

**9.** *See, e.g., Oliver v. Kaiser Community Health Foundation,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983); *Skidmore & Hall v. Rottman,* 5 Ohio St.3d 210, 450 N.E.2d 684 (1983).

would have little effect on family harmony. *Dorsey v. State Farm Mutual Ins. Co.,* 9 Ohio St.3d 27, 457 N.E.2d 1169 (1984), *overruling, Karam v. Allstate Ins. Co.,* 70 Ohio St.2d 227, 436 N.E.2d 1014 (1982) (Parental immunity is unavailable when the parent tortfeasor dies because there is no family tranquility to protect.); *Prem v. Cox,* 2 Ohio St.3d 149, 443 N.E.2d 511 (1983) (Spousal immunity is not available in wrongful death action by the estate of a decedent who was killed by the negligence of her spouse).

The foregoing discussion of intra-family immunities does not directly answer the question before the Court. However, the respect for family harmony and tranquility that the Ohio Supreme Court has evidenced in this area of the law is an indication that the court would look favorably upon the claim of a child to compensation for loss of parental consortium growing out of the destruction of the family harmony and tranquility through the negligence of some third person.

Furthermore, this Court does not believe that the various reasons which are given to support the denial of a child's claim would be credited by the Ohio Supreme Court. For instance, a majority of the court has turned a deaf ear to the argument that a result in a case would have an adverse impact on insurance companies. *See, e.g., Hutchinson v. J.C. Penny Casualty Ins. Co.,* 17 Ohio St.3d 195, 203, 478 N.E.2d 1000, 1007 (1985) (Wright, J., joined by Locher, J., and Holmes, J., dissenting) ("The allowance of punitive damages can only inure to the detriment of the public in the form of higher insurance premiums....."). Thus, it is unlikely that the court would be persuaded by the argument that a child's claim should not be allowed because to do so would lead to higher insurance premiums. Additionally, the Ohio Supreme Court would reject the argument that the child's claim should be denied because the damages a child suffers are too

speculative. In the leading case of *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), the court recognized the tort of negligent infliction of mental distress even though the resulting injury was purely psychic.

■ Based upon the foregoing, this Court is firmly convinced that the Ohio Supreme Court would recognize the right of a child to recover for loss of parental consortium caused by the negligence of some third person.[10] This Court is of the opinion that the Ohio Supreme Court would find that decisions which have recognized a child's right to recovery to be more persuasive than those which have declined to recognize such a right.

In reaching this conclusion, this Court respectfully disagrees with the opposite determinations made by the Montgomery County Court of Appeals in 1956 and Cuyahoga County Court of Appeals in 1951. However, in so doing, this Court has not violated the Sixth Circuit's command not to disregard lightly and thus to treat with deference the decisions of the state appellate tribunals. *See Clutter v. Johns-Manville Sales Corp., supra.* In addition to the above discussion, the Court would point to three additional factors which make these thirty-four and twenty-nine year old decisions somewhat less than persuasive. First, these cases were decided long before the Ohio Supreme Court recognized a wife's right to loss of consortium arising out of injuries to her spouse caused by a third person. *See Clouston v. Remlinger Oldsmobile Cadillac, Inc.,* 22 Ohio St.2d 65, 258 N.E.2d 230 (1970), *overruling, Smith v. Nicholas Building Co.,* 93 Ohio St. 101, 112 N.E. 204 (1915). The Court is not aware of any jurisdiction where a child's claim for loss of consortium was recognized before that of a wife. Additionally, these cases were decided before *any* state recognized a child's claim for loss of

---

**10.** This conclusion is in line with the stated policy of the Ohio General Assembly. In 1982, the Ohio General Assembly passed Am.Sub.H.B. No. 332, by which Ohio's wrongful death statute,

Ohio Rev.Code § 2125.02, was amended to allow for the recovery of damages for loss of consortium.

parental consortium. Finally, those cases were decided in an era when courts, including the Ohio Supreme Court, took a more restrictive view of tort liability.

Accordingly, the Court hereby overrules the motion of Defendants Newport Yellow Cab and Charles DeMoss for judgment on the pleadings.