257 So.2d 806 (1972)
Mrs. Frances W. JAGERS, Plaintiff-Appellee,
v.
ROYAL INDEMNITY COMPANY et al., Defendants-Appellants.
No. 3712.
Court of Appeal of Louisiana, Third Circuit.
January 21, 1972.
Dissenting Opinion January 25, 1972.
Rehearing Denied March 1, 1972.
Writ Granted April 13, 1972.
*807 Gist, Methvin & Trimble, Alexandria (H. B. Gist, Jr., Alexandria, of counsel), for defendants-appellants.
Stafford, Pitts & Bolen, James A. Bolen, Jr., Alexandria, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
SAVOY, Judge.
On August 21, 1969, approximately four days after Hurricane Camille ravished the Mississippi Gulf Coast, Mrs. Frances Jagers, plaintiff in this suit, suffered a broken arm and other lesser injuries in a two car accident at the intersection of Pass Road and Washington Avenue in Gulfport, Mississippi. Joined as defendants in the instant suit are Royal Indemnity Company, liability insurer of the 1964 Pontiac owned by plaintiff and in which she was riding as a guest passenger; and Wesley Jagers, minor son of plaintiff, who was driving the Pontiac at the time of the accident.
Evidence adduced at the trial shows that Pass Road is a four lane artery running east and west and intersects (at the point of the collision) with Washington Avenue, a two lane artery running north and south. Prior to the collision, Wesley Jagers was operating the Pontiac in an easterly direction in the right lane of Pass Road at a speed of approximately 30 miles per hour. Young Jagers and his mother had set out to pick up some ice for themselves and neighbors and had been traveling on Pass Road for some distance, having passed several intersections where the traffic lights were not operating and traffic was controlled by National Guardsmen and other *808 officers called out in the aftermath of the hurricane.
As they approached the Washington Avenue intersection, Wesley noticed that a truck and car heading also in an easterly direction had stopped or almost stopped in the left lane, and he thought the vehicles were turning left onto Washington Avenue. When Wesley continued into the intersection and about the time he was even with the front of the truck, he saw a 1969 Buick entering his lane from Washington Avenue. His efforts to avoid striking the Buick were to no avail, and a collision ensued in the east-bound right lane.
A trial on the merits resulted in a judgment against Royal Indemnity Company and Wesley Jagers in solido in the amount of $10,000.00 with interest and costs, representing the full amount of the liability policy in force on the Pontiac. Judgment was further rendered against Wesley Jagers individually in the sum of $2,948.44, and against Royal Indemnity Company at the rate of 7% per annum from the date of the judgment on the $2,948.44, representing interest on that amount.
Defendants have appealed, contending that the trial court erred in the following particulars: (1) in not applying the law of Mississippi; (2) in holding that Wesley was negligent; (3) in not finding plaintiff guilty of contributory negligence; and (4) in awarding an excess judgment against plaintiff's unemancipated minor son.
In Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970) our Supreme Court held that the conflict of laws rule of lex loci delicti applies to Louisiana courts, and the substantive law of the place where the tort occurred applies where the same is ascertainable. However, where the laws of a sister state are relied upon, such laws must, in the absence of definite proof to the contrary, be presumed to be the same as ours. Succession of Shadrick, 129 So.2d 606 (La.App. 2 Cir. 1961). None of the cases cited by counsel for appellants hold that in Mississippi a parent is unable to sue his unemancipated minor child. Thus, we must turn to the law in Louisiana for a determination of the first issue.
In Deshotel v. Travelers Indemnity Company, 257 La. 567, 243 So.2d 259 (1971), our Supreme Court held that where a father sued his unemancipated minor son when involved in a car wreck in Louisiana where the son was driving, the father had a direct action against his own insurer (LSA-R.S. 22:655) because the son was an insured under the omnibus policy clause contained in the insurance policy. The court further noted that the father had a cause of action against his minor son for a tort and stated that there was no bar to a right of action against the minor son unless public policy would deny the father a right of action against the minor son directly.
Should Louisiana uphold the Intra-family Immunity Doctrine and thus prohibit the bringing of a suit by a parent against his or her unemancipated minor child? We think not. Our legislature has not seen fit to prohibit such an action by statute, and although the apparent majority rule[1] does prohibit such an action on the grounds that it may tend to undermine the family relationship, is it not also against public policy to deny recovery to one who is the innocent victim of the negligence of another? See Studies in Louisiana Torts Law page 548. As a practical matter, in the event a parent would institute an action against his unemancipated minor child, would not the family relationship in effect be very nearly already undermined? We do not feel that the simple fact that a parent could not institute a suit against his or her unemancipated minor child would be enough to prevent family discord.
*809 Our next issue relates to the negligence of young Jagers, the driver of the Pontiac. The trial court, in its ruling, held that Wesley was negligent in not slowing his vehicle when approaching the traffic light which was not working when he saw two vehicles in the left lane stopped or coming to a stop. We are also in agreement with this finding. The police report introduced into evidence by joint stipulation of the parties shows that the Buick was given the right-of-way by a flagman at the intersection, and that the Pontiac was told to stop, and when the Pontiac did not stop, the collision occurred. Wesley testified that he noticed the traffic in the left lane stopping or coming to a stop, but thought they were executing such a maneuver prior to making a left turn. On cross-examination Wesley stated that the man directing traffic was wearing green fatigues and asked Wesley if he had not seen him give the right-of-way to traffic proceeding across Washington Avenue. Wesley admitted he did not decrease his speed upon approaching the intersection where the accident happened. We feel that this testimony, taken in conjunction with the fact that the traffic lights were not working in the aftermath of the hurricane, establishes the negligence of Wesley, and that he should have reduced his speed upon approaching the intersection and seeing other traffic also traveling in an easterly direction in a stopped position so as to have enabled him to bring the Pontiac to a stop in the event circumstances so dictated. His failure to do so was negligence which proximately caused the accident.
The third issue for determination is whether or not the plaintiff was guilty of contributory negligence so as to bar any recovery for her injuries. Defendants contend that the language found in the Mississippi Supreme Court case of Hatcher v. Daniel, 228 Miss. 196, 87 So.2d 490 (1956) should defeat recovery because of contributory negligence. A reading of the Hatcher case, supra, discloses that it dealt with the assumption of risk by a guest passenger of injury from known or obvious dangers or hazards incident to the ordinary operation of a vehicle. The facts in the instant case indicate that plaintiff was not negligent and did not assume the risk.
Since no Mississippi law has been shown to us that places a greater burden upon an owner-guest passenger than a regular guest passenger, we now must look to the applicable law in Louisiana.
Under the rule of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), our Supreme Court expressly rejected the theoretical right of control by an owner of a vehicle over the driver of the vehicle. It stated that it was unrealistic to hold that the occupant of a vehicle has factually any control or right of control over the driving of the operator. The rule of White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245 (1963) is still applicable to us, and a guest or passenger in an automobile has the right to place reliance upon the driver and is not required to monitor the operation or pay strict attention to the road, save under special circumstances or conditions which dictate preventive measures by such passenger or guest.
We do not find any special circumstances at the time of the accident to have required stricter attention to the road by plaintiff. Although it is true that the accident occurred four days after a hurricane had hit, it is also true that Pass Road had been cleared of debris and traffic had been proceeding on it for some time without apparent incident. Although the traffic lights were out of order at the time, it was apparent to both that they were out all over town, and plaintiff had the right to expect that Wesley would approach all of the controlled intersections with the requisite care dictated by the circumstances. Mrs. Jagers testified that prior to the accident she was looking at a building that had been struck by the hurricane and was not keeping a close watch on the road. This action did not constitute negligence under the facts of this case.
*810 The final issue for determination relates to whether or not an excess judgment should have been rendered against young Jagers.
Defendants contend that Wesley was not a person of means, was attending Texas A & M at the time of the accident and had only performed odd jobs to pick up spending money in the summer. They rely upon the case of Smith v. Girley, 242 So.2d 32 (La.App. 1 Cir. 1970) as supporting the principle of law that the financial ability to respond to a judgment must be considered in the ultimate award. On the other hand, plaintiff contends that the excess judgment of $2,948.44 against Wesley is not excessive when his potential financial power is considered, citing Theriot v. Gianelloni, 121 So.2d 275 (La.App. 1 Cir. 1960). In the Theriot case, supra, the Court of Appeal increased an award from $3,000.00 to $10,000.00 for damages for the loss of an eye. The defendant was a 23-year-old college student who had great financial potential in form of inheritance and earning power. The defendant in this case is a 22-year-old college senior at Texas A & M and has a bright future. He also is the recipient of a trust which was introduced into evidence. We feel the excess judgment against Wesley is within the ambit of the trial court, and when considering the tremendous pain and suffering and recurring operations incurred by plaintiff, we do not find manifest error in the award.
For the foregoing reasons assigned the judgment of the district court is affirmed at defendants' costs.
Affirmed.
HOOD, Judge (dissenting).
I agree with my colleagues that the substantive law of Mississippi must be applied in this case, but I disagree with their conclusion that plaintiff has failed to show the applicable law of that State. In my opinion the record shows that under Mississippi law a mother cannot recover in tort against her unemancipated minor son.
The defendants filed a motion for summary judgment, and they attached to that motion an affidavit executed by a competent Mississippi attorney, the Honorable Rae Bryant, which contains a scholarly brief on the legal question presented here. A number of cases decided by Mississippi courts are cited and discussed in that brief, and the affiant-attorney concludes with the opinion that under Mississippi law a mother cannot maintain an action in tort against her unemanicipated minor child.
The motion for summary judgment came up regularly for hearing on November 6, 1970, and at that hearing the above mentioned affidavit was introduced in evidence. No counter affidavits were presented by plaintiff, and no other evidence was produced tending to show that the applicable law of Mississippi was different from that expressed by Mr. Bryant. At the time of that hearing, therefore, the affidavit of this Mississippi lawyer was the only evidence in the record as to the laws of that state relating to the issue presented here, and I think the trial judge erred at that time in denying the motion for summary judgment.
After judgment on the merits was rendered by the trial court, defendants filed a motion for new trial, and they attached to that motion an affidavit executed by another competent Mississippi attorney, the Honorable W. Scott Welch, III. This affidavit also contained a thorough brief of the laws of Mississippi on the question before us here, and Mr. Welch arrived at the same conclusion as that previously reached by Mr. Bryant, that is, that under Mississippi law a mother cannot maintain a tort action against her unemancipated minor child.
Although the last mentioned affidavit was executed by Mr. Welch two days before the motion for summary judgment came up for hearing, it was not offered in evidence at that hearing. Defendants alleged in their motion for new trial that "this affidavit was given to the plaintiff's attorney in this lawsuit." Whether that is true or not is immaterial. It is significant, however, *811 that plaintiff apparently has not been able to produce any Mississippi statute, or jurisprudence or legal opinion, which supports her theory as to the applicable law of that state.
The record thus contains the formal opinions of two Mississippi attorneys to the effect that in that state a mother cannot maintain a tort action against her unemancipated minor child. My colleagues concede that the "apparent majority rule" is the same as that expressed by the Mississippi attorneys. And, there is nothing in the record which in any way tends to show that such an action can be maintained in that state. Under those circumstances I do not feel that the majority is justified in holding that the law of Mississippi is different from what the evidence shows it to be.
Plaintiff argues that the affidavits of the two attorneys were never admitted in evidence when the case was tried on its merits, and that the trial court thus correctly refused to consider them. I do not agree with that argument. LSA-C.C.P. art. 1391 provides that every court of this state shall take judicial notice of the common law and statutes of every state, and that "the court may inform itself of such laws in any manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information." Reasonable notice was given to plaintiff in defendants' pleadings that defendants intended to show the laws of Mississippi, and plaintiff thus had an opportunity to prove her version of the laws of that state relating to this issue. She has made no attempt to show that the laws of Mississippi are different from that stated by the two attorneys above named.
In Succession of Shadrick, 129 So.2d 606 (La.App. 2 Cir. 1961), relied on by plaintiff, the Second Circuit Court of Appeal observed that it did not consider LSA-C.C.P. art. 1391 as requiring the court to take judicial notice of the law of another state, "except as it is brought to our attention by the record or the briefs." In the instant suit the applicable law of Mississippi has been brought to the attention of this court by the record and by the briefs. I think the court should consider these affidavits and briefs, whether the affidavits have or have not been received in evidence, and that we are bound to apply the law of Mississippi as shown by those uncontradicted affidavits.
I am convinced that under Mississippi law Mrs. Jagers has no right or cause of action to recover damages from her unemancipated minor son, and for that reason I feel that the trial judge and the majority of this court have erred in permitting her to recover.
For these reasons I respectfully dissent.
NOTES
[1] We say apparent majority rule because although most of the periodicals in which said rule is found state it to be the majority, in reality, most of the states have not had occasion to pass upon same.