367 S.E.2d 774

**ERIE INDEMNITY COMPANY**

v.

**Judith L. KERNS and Kelli Kerns.**

**No. CC970.**

Supreme Court of Appeals of West Virginia.

March 31, 1988.

Roger D. Curry, Fairmont, for Judith Kerns.

G. Patrick Stanton, Jr., Stanton & Stanton, Fairmont, for Erie Indem. Co.

NEELY, Justice:

On 1 August 1981, sixteen year old Kelli Kerns lost control of the 1979 Dodge Omni she was driving when she attempted to roll up her window. The Omni ran off the road and struck a guard rail, seriously injuring her mother, Mrs. Judith Kerns–McGinnis, a passenger and owner of the car.[1]

---

1. Mrs. McGinnis suffered a smashed pelvis, was in the hospital for seven weeks, incurred $16,-000 in medical bills and lost 389 days at work worth $29,000 in wages.

Mrs. McGinnis had auto insurance provided by Erie Indemnity Company, which included total liability coverage and medical payment coverage limited to $5,000. Mrs. McGinnis filed a claim with Erie Indemnity in the amount of $7,749.54 for personal injuries and damages to the vehicle. Erie paid that claim, including the $5,000 maximum for medical expenses.

Mrs. McGinnis then filed a civil action in the Circuit Court of Marion County asserting liability against her daughter, Kelli, and Erie Indemnity was requested to defend Kelli in the civil action.[2] Erie filed a complaint for declaratory judgment in the same court and delayed assuming the defense of Kelli Kerns pending rulings in that proceeding. The circuit court denied Mrs. McGinnis' motion for summary judgment in Erie's declaratory judgment action, citing the lack of settled law on issues presented by the parties, and certified the following questions to this court concerning Erie's obligation to defend and pay under its insurance contract:

"Where a plaintiff is riding as a passenger in her own automobile, which automobile is operated by such plaintiff's daughter, and where the negligence of such driver causes personal injuries to the plaintiff/owner:

(1) May the injured plaintiff/owner recover under the liability provisions of her own insurance policy?

(2) Absent a waiver by all parties, can an attorney, paid by the insurance company, ethically represent the defendant, daughter/driver adverse to the interest of the plaintiff owner?"

The circuit court answered both certified questions in the affirmative. We affirm.

## I

█ Petitioner, Erie Indemnity asserts that Mrs. McGinnis' suit against her daughter is an abuse of the family purpose doctrine and, therefore, her suit should be dismissed because it is contrary to public policy. Beginning with *Freeland v. Freeland*, 152 W.Va. 332, 162 S.E.2d 922 (1968), this Court started to restrict common law familial immunities. In *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976), parental immunity was abolished to allow a child to sue for injuries received in a motor vehicle accident. Similarly in *Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 244 S.E.2d 338 (1978), we abolished the defense of interspousal immunity. Next, in *Bartz v. Wheat*, 169 W.Va. 86, 285 S.E.2d 894 (1982) we held that when a family member is driving another family member's vehicle, the family purpose doctrine cannot be used to impute the negligence of the family member who is driving the vehicle to the family member who owns the vehicle.

The theory behind our abrogation of immunities was the almost universal existence of liability insurance. "Where liability insurance exists, the domestic tranquility argument is no longer valid, for, in fact, the real defendant is not the parent, but the insurance carrier." *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721, 723 (1976). In the case before us Erie promised on the face of the insurance policy to defend and indemnify any relative using a car it insured. The fact that the defendant is the daughter of the plaintiff does not prevent Mrs. McGinnis from bringing this suit to recover under her own liability policy. Erie must assume the defense of Kelli Kerns and pay the judgment if she loses.

## II

█ Erie next asserts that Mrs. McGinnis is abusing an imputed negligence theory by attempting to be both the injured party and the party to whom liability must be imputed by suing her judgment proof daughter for $100,000 under her own insurance policy.

In numerous jurisdictions this type of imputed negligence question has arisen in

---

**2.** Erie's policy specifically provides:

Others We Protect

1. Any *relative* using *a car we insure.*

2. Any person using or any person or organization legally responsible for the use of an *owned*

car we insure. This operation or other use must be with *your* permission, unless the use is by a resident of *your* household. (Emphasis in policy.)

automobile liability cases. Most courts hold that in an action between the driver and the owner, the driver should not be permitted to defeat the action on the ground that the driver's own negligence is imputed to the owner.[3] When the doctrine of imputed negligence from an agent to a principal applies, it usually applies only with regard to the principal's liability to, or right to recover from a *third person*—not to the liability of agent to the principal.

For example, in *Summers v. Summers,* 40 Ill.2d 338, 239 N.E.2d 795 (1968), an action by an owner who was a passenger in his own automobile against his nephew for personal injuries suffered by the owner, the court ruled that although an owner-passenger is chargeable for his own negligence in failing to perform his duty to control a driver, the negligence of the driver is not necessarily imputable to him and will not bar an action by the owner-passenger against the driver. "The negligence of a driver is not imputed to an owner-passenger in the absence of the relationship of *respondent superior* or the existence of a joint-enterprise." 239 N.E.2d at 799.

### III

Finally, Erie Indemnity asserts that Mrs. McGinnis and her daughter Kelli are in collusion because they are not true adverse parties and, therefore, this lawsuit violates public policy.

We recognize the unique problem an insurance carrier has in defending an inter-family suit. *See, Lee v. Comer, supra; Coffindaffer v. Coffindaffer, supra.* Obviously, in a suit between a child and parent, when the real defendant is an insurance company, the insurance company can expect only minimal cooperation from the insured.

■ Ordinarily, of course, a jury cannot be advised that a defendant carries liability insurance. *Leftwich v. Wesco Corporation,* 146 W.Va. 196, 119 S.E.2d 401 (1961).

However, in *Coffindaffer v. Coffindaffer, supra,* we observed that the purpose of this rule is to protect the insurer and that, therefore, the insurance company is free to waive the rule:

"In the case of fraud or collusion as to the truthfulness of the claim, the insurance company has always been able to explore these issues through discovery techniques and where the evidence warrants to bring the falsity of the claim before the jury. Anyone who has confronted insurance defense counsel in personal injury cases knows that it is a rare occasion when the false or collusive claim escapes their searching examination. We do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits. There is, to be sure, a difference between the ability to file a suit and to achieve a successful result. It is upon the anvil of litigation that the merit of the case is finally determined. Forged in the heat of trial, few but the meritorious survive."

161 W.Va. at 567, 244 S.E.2d at 343.

Therefore, Erie Indemnity, at its option, may set before the jury the fact that both the plaintiff and defendant have a community of interest and that the insurance company is the only adverse party. *See, Lee v. Comer, supra,* (Neely, J., concurring) 159 W.Va. at 595, 224 S.E.2d at 726. It is for the jury to determine to what extent Mrs. McGinnis may recover on the liability portion of her policy.

### IV

■ The second certified question is whether an attorney for the insurance company, absent a waiver by all parties, can ethically represent defendant-driver Kelli Kerns against her mother, the plaintiff-owner of the policy? Counsel for Erie asserts that he is caught in an ethical dilem-

---

**3.** *See, e.g., Mason v. Russell,* 158 Cal.App.2d 391, 322 P.2d 486 (3d Dist.1958); *Hale v. Adams,* 117 So.2d 524 (Fla.App.1960); *Summers v. Summers,* 40 Ill.2d 338, 239 N.E.2d 795 (1968); *Urquhart v. McEvoy,* 204 Misc. 426, 126 N.Y.S.2d 539 (1953); *Parrish v. Walsh,* 69 Ohio St.2d 11, 429 N.E.2d 1176 (1982); *Kirby v. Kirby,* 425 S.W.2d 561 (Ky.1968); *Etheridge v. Norfolk S.R. Co.,* 7 N.C.App. 140, 171 S.E.2d 459 (1970), 21 A.L.R.4th 459.

ma and faces an impossible conflict of interest in defending Kelli Kerns under DR 5–105 of the Code of Professional Responsibility as adopted by the Supreme Court of Appeals of West Virginia.[4] We disagree.

DR 5–105 of the *Code of Professional Responsibility* addresses the ethical dilemma of potential conflicts of interest between clients that an attorney may encounter and forbids representing clients with competing interests. However DR 5–105(C) also allows representation of multiple clients if it is obvious that all clients can be adequately represented and if each client consents after full disclosure of the dilemma. In the present case, counsel for Mrs. McGinnis has offered in this Court her waiver and consent to Erie's defense of her daughter. More important than waiver, however, is the fact that there is no real conflict of interest on the part of the insurance company attorney when he represents the defendant/driver against the insured. The actual nature of this case is that the insured is suing the insurer. Because there is no longer a unity of interest between the policyholder and the insurer, the insurance company has the right to defend its own interests in the suit by defending the nominal defendant. There simply is no conflict of interest that can violate DR 5–105 by the insurance attorney in this case and DR 5–105 does not apply.

Certified questions answered; rulings below affirmed.

---

**4.** DR 5–105 states, in full text:

*Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer —*

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his repre-

sentation of another client, of if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent in the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment.