STATEMENT OF THE CASE
Plaintiff Dixie Ales, the mother of Barbara Ales, filed a complaint in the Circuit Court of Panola County on January 28, 1991, against Barbara Ales. She claimed damages from her daughter, Barbara Ales, in the amount of $30,000 for injuries sustained in a one-car accident. Barbara filed a motion for summary judgment on July 8, 1991, asserting that her mother's cause of action was barred by the doctrine of parent-child immunity. Briefs were submitted to the court and oral arguments were heard on August 23, 1991. The circuit court, Judge George Carlson presiding, granted Barbara's motion, holding that Mississippi's doctrine of parent-unemancipated child immunity barred suits by parents against their children as well as suits by children against their parents. The court held that the date to which the court must look to determine whether a child is unemancipated for purposes of parent-child immunity is the date on which the cause of action accrued. The court also found that the existence of liability insurance has no bearing on the application of the doctrine, and that the doctrine does not violate the Equal Protection Clause of the United States Constitution. Finally, the court held that Burns v. Burns,518 So.2d 1205 (Miss. 1988), in which the Mississippi Supreme Court abrogated interspousal immunity, did not address the relationship between parents and children and, therefore, did not provide grounds to allow Dixie to sue her daughter for a cause of action that accrued when the daughter was unemancipated.
The court signed its Order granting Barbara's Motion for Summary Judgment on September 7, 1991, and final judgment was entered on the same day. From that judgment, Dixie perfects her appeal to this Court.
 STATEMENT OF THE FACTS
On March 27, 1989, Dixie Ales ("Dixie") was riding as a passenger in a car being driven by Barbara Ales ("Barbara"). Dixie is Barbara's mother. A one-car accident occurred, and Dixie alleged that, as a result, she suffered injury. At the time of the accident, Barbara was 19 years old, a minor, and living in Dixie's home as a member of the household. Barbara reached majority age on August 8, 1990, one year and five months after the accident. Thereafter, Dixie filed suit against Barbara on January 28, 1991, alleging negligence and negligence per se, to recover for injuries which she allegedly suffered on that occasion.
The facts and testimony showed that Barbara was driving the car too fast down a steep hill. Barbara failed to apply her brakes properly and promptly, and the car went into a spin. The car flipped and landed in a ditch before stopping. Barbara suffered minor injuries including injury to her leg. Dixie received a cut to the forehead, and two broken fingers which thereafter would not bend. Dixie chose to undergo physical therapy, but this was discontinued due to lack of improvement.
 DISCUSSION OF THE LAW Standard of Review
We employ a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. Short v. ColumbusRubber Gasket Co., Inc., 535 So.2d 61, 63 (1988). *Page 484 
This Court conducts a de novo review of orders granting or denying summary judgment and looks at all
 the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt. [citations omitted].
Mantachie Natural Gas District v. Mississippi Valley Gas Co.,594 So.2d 1170, 1172 (Miss. 1992).
This burden of proving that no disputed factual issues exist rests with moving party, and is one of production and persuasion, not of proof. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Miss.R.Civ.P. 56(c). To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991).
Finally, a motion for summary judgment should be overruled unless the trial court finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. McFadden v. State, 580 So.2d 1210 (Miss. 1991). "[T]he Court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Brown v. CreditCenter Inc., 444 So.2d 358, 362 (Miss. 1983).
 DID THE TRIAL COURT ERR WHEN IT GRANTED SUMMARY JUDGMENT?
The answer to this question depends upon the answer to two other questions: (1) whether Glaskox v. Glaskox, 614 So.2d 906
(Miss. 1992) applies to cases pending at the time of the decision and, if so; (2) whether parents have a reciprocal right to sue unemancipated children for injuries suffered in automobile accidents.
 1.
This Court has addressed the issue of retroactive application of new rules of law many times. "It is a general rule that judicially enunciated rules of law are applied retroactively."Hall v. Hilbun, 466 So.2d 856, 875 (Miss. 1985). See alsoKeyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 672-73 (Miss. 1983); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 466 (Miss. 1983).
The United States Supreme Court recently addressed the issue of retroactive application of federal law. Harper v. Virginia Dep'tof Taxation, ___ U.S. ___, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).[1] The Harper court clearly stated:
 When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.
Harper, ___ U.S. at ___, 113 S.Ct. at 2517. The Court admonished that "`[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.'" Id. ___ U.S. at ___-___, 113 S.Ct. at 2517-18 (citing American Trucking Assns., Inc. v. Scheiner,483 U.S. 266, 301-03, 107 S.Ct. 2829, 2850, 97 L.Ed.2d 226 (1987)). In his concurring opinion, Justice Scalia highlighted the point that "`the province and duty of the judicial department [is] *Page 485 
to say what the law is' . . . not what the law shall be." Id.
___ U.S. at ___, 113 S.Ct. at 2523 (Scalia, J., concurring) (citation omitted). Justice Scalia further wrote that "[f]ully retroactive decisionmaking [is] considered a principal distinction between the judicial and the legislative power."Id.[2]
This Court finds the analysis of the United States Supreme Court and our own precedent particularly persuasive. Further, we distinguish prior cases that were decided prospectively only as generally being decisions dealing with government action or public interest matters or with public funds. For example, inPruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982), this Court abolished sovereign immunity on and after July 1, 1984. The Court noted that immediate abolition would leave state and local subdivisions unprepared. Therefore, the Court afforded the legislature and other governmental entities the time to adjust to a new court decision that would have a significant impact on governmental monetary resources. This Court continued to safeguard what it saw as a public interest by our holding inPresley v. Miss. State Hwy Com'n, 608 So.2d 1288 (Miss. 1992), where the Court again announced that the Sovereign Immunity Act was unconstitutional and held that the mandate would apply retroactively for governmental entities covered by liability insurance to the extent of the coverage. This Court, inAlexander v. Allain, 441 So.2d 1329, 1346-47 (Miss. 1983), while announcing that it was unconstitutional for a person to hold offices within two branches of government at the same time, stayed the immediate action of removal of those so serving, although clearly the Court could have ordered such removal.Alexander v. Allain, 441 So.2d at 1346-47. The Court acknowledged that the decision would have a wide impact and gave time to those persons affected to make adjustments in the operation of government by making the mandate effective July 1, 1984. Id. In these cases, the Court rightly determined that public interest and security outweighed the individuals' rights and claims.
In today's decision, we are not called on to deal with government action or public money. The case sub judice involves the partial abrogation of parent-unemancipated child immunity, a new rule acknowledged in Glaskox. Parent-unemancipated child immunity is analogous to interspousal immunity which was abolished in Burns v. Burns, 518 So.2d 1205 (Miss. 1988).[3]
This Court similarly had to decide whether to apply the new rule announced in Burns to cases pending at the time of the Burns
decision. One such case was Cain v. McKinnon, 552 So.2d 91
(Miss. 1989). In Cain, this Court acknowledged that historically this Court has "held that decisions overruling common law principles [are] applied retroactively." Cain, 552 So.2d at 92 (citing Hall v. Hilbun, 466 So.2d 856, 875-77 (Miss. 1985)).[4] The Cain Court stated that "[w]here the new rule lies exclusively in the area of remedies, importing no new standard of proscribed conduct, a reliance argument against retroactivity is difficult." Id. The Court concluded by applying the new rule announced in Burns retroactively. The Court reasoned that it would be difficult to hold the husband inBurns accountable and exonerate the husband in Cain. Id.
Following this logic, we find it equally as difficult to bar the mother in the Ales case from suit against her child since we afforded the child in Glaskox a right to sue her parents. The chronology of events in Ales is as follows:
January 13, 1988 Burns v. Burns was decided.
March 27, 1989 Dixie Ales and Barbara Ales were in car wreck. Barbara was a minor. *Page 486 
January 28, 1991 Dixie Ales filed suit against Barbara Ales.
September 7, 1991 Summary Judgment granted in favor of Barbara Ales.
October 2, 1991 Dixie filed her appeal with this Court.
October 29, 1992 Glaskox v. Glaskox was decided.
Because the Ales case was pending review at the time of theGlaskox decision, the Court finds that the Glaskox decision applies retroactively.
 APPLICATION OF THE GLASKOX DECISION
Subsequent to the grant of the summary judgment now before this Court, the Mississippi Supreme Court at least partially abrogated parent-unemancipated child immunity in Glaskox v. Glaskox,614 So.2d 906 (Miss. 1992). Glaskox involved a child who sustained injuries while her father was operating a motor vehicle. Id. at 907. This Court held that the "judicially created doctrine of parental immunity has outlived its purpose and adopt[ed] the majority view abrogating the principle as it applies to the negligent operation of a motor vehicle." Id. at 912. However, the Court did not explicitly provide that parents would be allowed to sue their children under like circumstances.[5]
The case sub judice involves a mother who has sued her unemancipated daughter for injuries caused during an automobile accident where the daughter was driving — the same basic scenario as presented in Glaskox with parent-child roles being reversed. This Court holds that parents have a right to sue their children for injuries sustained due to negligent operation of a motor vehicle.
There are several rationales that have been offered in support of parent-unemancipated child immunity including:
 (1) the possibility of parental inheritance of the child's recovery; (2) the need to insure the parent's right to discipline, care and control; (3) the need to avoid the depletion of family assets; (4) the need to maintain domestic tranquility and harmony; (5) the possibility of fraud and collusion among family members; and (6) the analogy to spousal immunity.
Wingerter, Isabel, Parent-Child Tort Immunity, 50 La.L.Rev. 1131, 1135 (1990). Rationales numbered (1), (2) and (3) do not apply to these facts. With regard to the remaining rationales, the Glaskox Court discussed the analogy of parent-child immunity to spousal immunity and noted that spousal immunity was abrogated by this Court in Burns v. Burns, 518 So.2d 1205
(Miss. 1988). Id. at 911. The Glaskox Court further stated that "family tranquility . . . is not a proper justification to deprive a minor child of the right to sue for injuries to his person. Moreover, domestic peace and harmony may be more threatened by denying the cause of action." Id. In considering the potential for fraud and collusion, rationale number 5, the Court answered that "[w]hile a possibility, this factor does not justify denial of otherwise meritorious claims." Id. at 912. Thus, having eliminated all the rationales justifying parent-child immunity, the Court grants parents reciprocal rights to sue their children for injuries arising out of negligent use of motor vehicles.
The Restatement (Second) of Torts reads "a parent or child is not immune from tort liability to [the] other solely by reason of that relationship." Restatement (Second) of Torts § 895G(1) (1979). Other jurisdictions have similarly recognized that reciprocal rights exist between parent and child. The Nevada Supreme Court stated "the doctrine of parental immunity is reciprocal." Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013, 1017 (1974) (declining to adopt doctrine of parental immunity). In addressing the question of whether a father could sue a son for ordinary negligence, the court in Wallace v. Wallace,466 S.W.2d 416 (Tex.Civ.App. 1971), announced that the doctrine would be applied with "equal force" regardless of "whether the suit is one by an unemancipated minor child against its parent or a parent against an unemancipated child." Indeed, it would seem illogical for the door of legal relief to swing open only for the benefit of an unemancipated *Page 487 
child against his parent. In Diehl v. Diehl, 421 N.W.2d 884, 886 (Iowa 1988), the court shared "the view that these familial immunities, to the extent they are recognized at all, should be reciprocal." See also Guterman v. Guterman, 66 N.J. 69,328 A.2d 233 (1974) (supporting reciprocal rights for parent and child). Additionally, several states have allowed parents to sue their unemancipated child for negligent operation of a motor vehicle.[6] Consequently, to the extent parental immunity was abolished in Glaskox, this Court recognizes that parents may maintain suits against their children.
The trial court entered judgment before the Glaskox decision; thus, his ruling was correctly based on then-existing law. However, the law has changed since the case sub judice was appealed. Therefore, this Court finds that summary judgment in favor of Barbara Ales, the daughter, is reversed in accord with the Glaskox decision and its expansion here today.
 CONCLUSION
This Court in Glaskox created an exception to the long-standing doctrine of parent-unemancipated child immunity and allowed a child to sue her father for injuries suffered in an automobile accident. This Court, in following the present trend of other jurisdictions, will extend the exception to both parents and children equally. Therefore, this Court reverses the Order granting summary judgment based upon parent-unemancipated child immunity.
REVERSED AND REMANDED.
PRATHER, P.J., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by HAWKINS, C.J.
[1] See Harper, ___ U.S. at ___, 113 S.Ct. at 2516, for a discussion of the line of United States Supreme Court cases regarding retroactive application of laws.
[2] "`[I]t is said that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases.'" Harper, ___ U.S. at ___, 113 S.Ct. at 2523 (Scalia, J., concurring) (citing T. Cooley, Constitutional Limitations
91 (1868)).
[3] Note that the Burns decision was discussed in detail in the Glaskox case which controls the case sub judice.
[4] In Cain, we also cited several decisions in which the presumption of retroactivity seemed to be assumed. Cain, 552 So.2d at 92.
[5] The history of how parent-child immunity arose in the common law of many states was recounted in Glaskox, at 909-10 and need not be repeated here.
[6] Bueno v. Duva, 1992 WL 170606 (Conn.Super.Ct. 1992) (abrogating immunity for negligence in use of motor vehicles);Ard v. Ard, 414 So.2d 1066, 1067 (Fla. 1982) (abrogating parent-child immunity in motor torts, "to extent of the parent's available liability insurance coverage"); Turner v. Turner,304 N.W.2d 786 (Iowa 1981) (abolishing parent-child immunity with respect to motor torts); Jagers v. Royal Indemnity Co.,257 So.2d 806 (La. Ct. App. 1972) (not barring parent from suit against unemancipated child arising out of automobile accident);Guterman v. Guterman, 66 N.J. 69, 328 A.2d 233 (1974) (holding that suits for personal injuries based on negligent vehicular operation may be brought by parents against their unemancipated child, as well as by child against parent); Orphan v. Byrne,73 Misc.2d 1098, 343 N.Y.S.2d 537 (1973) (recognizing complete abolition of intrafamilial immunity and further stating "right of one family member to sue another does not depend on whether there is insurance"); Kirchner v. Crystal, 15 Ohio St.3d 326, 15 OBR 452, 474 N.E.2d 275 (1984) (abolishing parent-child immunity without reservation); Price v. Price, 19 Ohio App.3d 245, 19 OBR 397, 483 N.E.2d 1222 (1985) (following Kirchner in allowing parent to sue minor child for negligence in connection with automobile accident); and Silva v. Silva, 446 A.2d 1013 (R.I. 1982) (permitting mother to bring negligence action against unemancipated son to recover for injuries due to automobile accident).