Megan BENTLEY;  and American International South Insurance Company, Appellants,

v.

David BENTLEY, Appellee.

No. 2003–SC–1051–DG.

Supreme Court of Kentucky.

Sept. 22, 2005.

Robert L. Steinmetz, Diane Rose Conley, Frost, Brown, Todd, LLC, Edward H. Stopher, Darryl S. Lavery, Boehl, Stopher & Graves, LLP, Louisville, Counsel for Appellants.

Bruce W. MacDonald, McBrayer, McGinnis, Leslie & Kirkland, Greenup, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

In *Thompson v. Thompson,* 264 S.W.2d 667 (Ky.1954), our predecessor court held that a parent could not maintain an action in tort against his or her unemancipated minor child for injuries arising out of the child's negligent operation of a motor vehicle. We now conclude that we should depart from this aspect of intra-family immunity, and overrule *Thompson.*

Appellee, David Bentley, filed suit in the Greenup Circuit Court for damages arising out of a two-vehicle accident that occurred on September 24, 2000. Bentley was a passenger in a vehicle owned and insured by his wife, Carol Bentley, and being operated at the time by his daughter, Megan Bentley. He sued Megan in tort, and also sued the insurer, American International South Insurance Company, asserting "bad faith" refusal to settle his claim against Megan in violation of the Unfair Claims Settlement Practices Act (UCSPA). KRS 304.12–230. The insurer's refusal to settle was specifically premised upon the holding in *Thompson.* The record of the Greenup Circuit Court contains no proof, by way of interrogatory, admission, or stipulation, that Megan Bentley was David Bentley's daughter, that she was a minor, or that she was unemancipated. Nevertheless, the trial court dismissed the complaint, accurately noting that *Thompson* had never been overruled. The Court of Appeals reversed, holding in a "not to be published" opinion that "*Thompson* is no longer good law." *Bentley v. Bentley,* No.2002–CA–001455–MR, slip op. at 9, 2003 WL 22801134 at *4 (Ky.App. Nov.26, 2003). Of course, neither a circuit court nor the Court of Appeals has authority to overrule precedents of this Court or our predecessor court. SCR 1.040(5); SCR 1.030(8)(a); *Charash v. Johnson,* 43 S.W.3d 274, 277 nn.2 & 3 (Ky.App.2000). Because both parties and both lower courts have assumed that Megan Bentley is David Bentley's unemancipated minor child, we

choose to address the issue despite the inadequacy of the record.

■ In *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky.1970), our predecessor court abrogated the concept of "parental immunity" that precluded a child from suing his or her parent in tort, "except in the two following situations: (1) where the negligent act relied on for a recovery involves the reasonable exercise of parental authority over the child, and (2) where the alleged negligent act involves the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Id.* at 923. Parental immunity first entered our jurisprudence in *Harralson v. Thomas*, 269 S.W.2d 276 (Ky.1954), a case rendered four months after *Thompson* was decided. *Rigdon* indicated that it was addressing the immunity created by *Harralson*, and did not mention *Thompson* at all. *Rigdon*, 465 S.W.2d at 922.

The principle that a parent may not prosecute a tort action against his or her unemancipated minor child is a recognized corollary to parental immunity. *Mauk v. Mauk*, 12 Ohio St.3d 156, 466 N.E.2d 166, 167 (1984). Such actions are far rarer than tort actions by the child against the parent—perhaps because an adult is more likely to injure a child than vice versa. However, the Restatement (Second) of Torts § 895G (1979) recommends abolition of all parent-child immunities with some exceptions, *viz:*

(1) A parent *or* child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious. (Emphasis added.) The Comment to subsection (2) cites commonplace incidents of family life as an exception to the rule of liability:

> A child thoughtlessly leaves his skates in a hallway and the parent trips over them or slides on them and falls, or a parent delays fixing a slightly broken step or calling in a carpenter to do it and the child falls as a result; these occurrences are normally regarded as commonplace incidents in family life and usually treated as accidents rather than the basis for imposing legal liability.

Rest. (2d) Torts § 895G cmt. k.[1]

The reporter's notes to Section 895G state that as of 1979, seventeen jurisdictions had abolished parent-child immunity in its entirety (erroneously citing *Rigdon* as including Kentucky in that category), and that eight additional states have abolished the immunity if the tort arises out of the operation of a motor vehicle. Rest. (2d) Torts § 895G reporter's notes. At least six jurisdictions have specifically held that a parent can sue his or her unemancipated minor child for damages arising out of the child's negligent operation of a motor vehicle. *Jagers v. Royal Indem. Co.*, 257 So.2d 806, 808 (La.Ct.App.1972); *Ales v. Ales*, 650 So.2d 482, 487 (Miss.1995); *Guterman v. Guterman*, 66 N.J. 69, 328 A.2d 233, 234 (1974); *Price v. Price*, 19 Ohio App.3d 245, 483 N.E.2d 1222, 1223–24 (1985); *Silva v. Silva*, 446 A.2d 1013, 1017 (R.I.1982); *Erie Indem. Co. v. Kerns*, 179 W.Va. 305, 367 S.E.2d 774, 776 (1988). Such holdings are consistent with the public policy behind our Motor Vehicle Reparations Act (MVRA), KRS 304.39–010, *et seq.*, and our holdings in *Bishop v. Allstate*

---

1. *Harralson* also cited the hypothetical scenario of a child suing a parent for injuries sustained by falling down negligently repaired steps in the home as a reason for adopting parental immunity. 269 S.W.2d at 278.

Insurance Co., 623 S.W.2d 865, 866 (Ky. 1981), and Lewis v. West American Insurance Co., 927 S.W.2d 829, 835 (Ky.1996), that household exclusion clauses in policies of automobile liability insurance are contrary to that public policy.

The concept of parental immunity did not exist in the English common law and appears to have been fashioned out of whole cloth in *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891). Rest. (2d) Torts § 895G cmt. b. The justifications usually advanced for parent-child immunity are:

(1) Public interest in maintaining family harmony and tranquility.

(2) Maintenance of parental authority and discipline.

(3) Prevention of fraud and collusion.

(4) Preservation of equal distribution of the family exchequer.

(5) Avoidance of useless litigation in that the parent may, in the event of the death of the child, inherit any money which the child may have recovered from the parent [and vice versa].

(6) Prevention of assertion of stale claims of minors on their reaching majority.

*Thurman v. Etherton*, 459 S.W.2d 402, 403 (Ky.1970) (citation and internal quotations omitted). However:

> [None] of these reasons would appear to outweigh the more urgent desirability of compensating the injured person, and particularly a child, for genuine harm that may cripple him for life and ruin his entire future. The development of liability insurance, especially in the area of automobile accidents, has removed to a considerable extent whatever theoretical justification this reasoning may once have afforded.

Rest. (2d) Torts § 895G cmt. c.

We now adopt the rule stated in the Restatement (Second) of Torts § 895G (1979), subject to Comment k's exception for "commonplace incidents in family life." We will not attempt to anticipate in this opinion the nature of all possible "commonplace incidents in family life," except to say that such incidents do not include acts that are as likely to cause harm to the general public as to family members, such as the negligent operation of a motor vehicle. Nor need we address here the other exceptions described in Comments d through i of Section 895G, none of which have any application to the facts of this case.

■■■ However, with respect to David Bentley's claim against American Indemnity South Insurance Company, an insurer cannot be held to have acted in "bad faith" by failing to settle a claim unless it is shown "that the insurer either knew there was no reasonable basis for denying the claim or acted in reckless disregard for whether such a basis existed.... [A]n insurer is ... entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.1993) (quoting *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky.1986) (Leibson J., dissenting)). Since the insurance company in this case denied the claim in reliance on existing precedent which had not been overruled, i.e., *Thompson*, a fortiori, there was a reasonable basis for denying the claim and the trial court properly dismissed the UCSPA claim against the insurer. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky.1997) ("In view of ... existing law ... that defense was not only fairly debatable, it had substantial merit.").

Accordingly, we affirm the Court of Appeals' opinion insofar as it reverses the Greenup Circuit Court's dismissal of David Bentley's cause of action against Megan Bentley; we reverse the Court of Appeals'

opinion insofar as it reverses the Greenup Circuit Court's dismissal of David Bentley's cause of action against American International South Insurance Company; and we remand this case to the Greenup Circuit Court with directions to conduct such further proceedings as are consistent with this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

ROACH, J., concurs by separate opinion, with GRAVES, J., joining that concurring opinion.

ROACH, Justice, concurring.

Generally, the declaration of public policy is the prerogative of the General Assembly. *See Fann v. McGuffey,* 534 S.W.2d 770, 779 (Ky.1975) ("It is elementary that the legislative branch of government has the prerogative of declaring public policy and that the mere wisdom of its choice in that respect is not subject to the judgment of a court."). However, the General Assembly has not addressed the issue of parent-child immunity since our predecessor court abrogated the concept of parental immunity in *Rigdon v. Rigdon,* 465 S.W.2d 921 (Ky.1970). Therefore, because there is no principled distinction between abandoning parental immunity and retaining immunity for children against tort actions by their parents, I concur.

GRAVES, J., joins this concurring opinion.